In Matter of the STATE ex rel. STANDARD FIRE INSURANCE COMPANY of Hartford, Connecticut, v. ERNEST D. GANTT, Judge of Circuit Court.

### In Banc, May 17, 1918.

1. **PROHIBITION: Facts: Motion for Judgment Upon Pleadings.** Where the return to the preliminary rule in prohibition admits all material facts pleaded in the petition, and relator thereupon moves for judgment upon the pleadings, the cause is to be determined upon the law applicable to the facts stated in relator's petition.

2. **REPEAL OF STATUTE: Defective Title: Effect on Existing Statute: Waiver.** An act which attempts to repeal an existing statute, if void because of a defective title, leaves the existing statute in full force. Consequently, it is not necessary to decide relator's contention that the Act of 1885, which undertook to repeal Section

6013, Revised Statutes 1879, and enact a new statute in lieu thereof, was void because of a defect in its title, if relator has fully complied with said existing Section 6013, which required a foreign insurance company to execute and file a power of attorney designating and authorizing "some person" as its attorney in fact to accept and receive service of process, and it has, though apparently in obedience to the Act of 1885, executed and filed its power of attorney designating and authorizing the Superintendent of Insurance to accept and receive service of process in its behalf, which Act of 1885 required relator to so designate said superintendent as its attorney in fact.

3. **FOREIGN INSURANCE COMPANY**: Service Upon Superintendent of Insurance: Venue.

*Held*, by FARIS, J., and GRAVES, C. J., with whom WALKER, J., concurs, that Section 7042, Revised Statutes 1909, providing that in all proceedings that may be instituted against a foreign insurance company, in any court of this State or any court of the United States in this State, service of process may be had upon the Superintendent of Insurance, is a service statute and not a venue statute.

*Held*, by WOODSON, J., dissenting, that said Section 7042 is both a service statute and a venue statute, and being such it makes a foreign insurance company licensed to do business in this State a resident of every county in the State, and confers jurisdiction upon the circuit court of any county in which the suit is filed to hear and determine the case.

4. ———: ———: ———: **Prohibition**. If upon no sort of service of process the circuit court of a particular county can acquire jurisdiction to hear and determine a particular case, because of a lack of statutory venue, then prohibition will lie.

5. ———: **Venue: Suit in Any County: Like Other Corporations**. The statutes do not confer upon the holder of a policy issued by a foreign insurance company licensed to do business in this State, which has filed its power of attorney with the Superintendent of Insurance authorizing him to receive and accept service in its behalf, the right to choose any one of the many counties in this State as the forum in which to try the suit, by filing his petition in the circuit court of the county so chosen and having the summons served upon the said superintendent. Where such a company has no agent in Audrain County for the transaction of its usual and customary business and the plaintiff resides and the cause of action accrued in St. Louis, the circuit court of Audrain County does not have any jurisdiction to hear and determine an action founded on such policy.

*Held*, by FARIS, J., with whom GRAVES, C. J., and WALKER, J., concur, that the venue in a suit against a foreign insurance company, licensed to do and actually doing business in this

State, which has filed its power of attorney with the Superintendent of Insurance to receive and accept service in its behalf, is determined by Section 1754, Revised Statutes 1909, which provides that an action against a corporation may be brought in the county where such cause of action accrued, or in any county where the corporation has an agent for the transaction of its usual and customary business, and not by Section 1751, nor by Section 7042, which is a service statute and not a venue statute. Section 7042, requiring a foreign insurance company to file a power of attorney authorizing the Superintendent of Insurance to receive and accept service in its behalf, is a service statute and does not authorize the circuit court of any one of the many counties in the State which the holder may choose as the forum, to hear and determine an action founded on a policy issued by said foreign insurance company. The venue in such case is determined by Section 1754 alone; service of process is governed by Section 7042 alone.

*Held*, by WOODSON, J., dissenting, that said Section 7042 is also a venue statute, and the circuit court of Audrain County has jurisdiction to hear and determine said suit, whether the plaintiff be a resident of St. Louis or of another State and whether his cause of action accrued in St. Louis or elsewhere in this State or in another State.

6. ————: Special Venue Statues: Permissible Constitutional Classification. *Held*, by FARIS, J., with whom, WALKER, J., concurs, that Subdivision 4 of Section 53 of Article 4 of the Constitution expressly forbidding the General Assembly to "pass any local or special law . . . changing the venue in civil or criminal cases" by its very language excludes the permissible classification given by Subdivision 32 of said section in all matters of legislation, except those in regard to which special laws are by the preceding thirty-one subdivisions expressly forbidden.

*Held*, by GRAVES, C. J., that there might be a valid classification of corporations as to the venue of actions.

7. ————: Venue: Hardship of Rule. The character of business done by insurance companies accentuates and increases the apparent hardship of the rule, applicable to them as well as to industrial corporations, that the venue of suits against them is either the county where the cause of action accrued or the counties in which they maintain an agent for the transaction of their usual and customary business; but that hardship is a difficulty to be solved by the General Assembly, if a solution which is not inhibited by the Constitution is possible.

*Held*, by GRAVES, C. J., that said Section 7042 is not a venue statute, but it is not invalid as violative of Subdivision 4 of Section 53 of Article 4 of the Constitution, and that a valid

statute classifying corporations as to venue of actions might be and should be enacted.

*Held*, by WOODSON, J., dissenting, that said Section 7042 is a venue statute, is so recognized by the Supreme Court of the United States and by this court in a number of decisions, and was intended 'to permit a foreign insurance company to be sued in any county in this State, and the purpose of its enactment was to give relief against such hardships.

8. ———: ———: Federal Constitution. Since Section 7042, Revised Statutes 1909, does not determine the venue of a cause of action against a foreign insurance company licensed to do business in this State, it does not transgress the due-process-of-law clause of the Federal Constitution; it does not permit a venue of a cause of action against a foreign insurance company that it denies to a domestic insurance company.

9. ———: ———: Prohibition: Agent in County. A foreign insurance company licensed to do business in this State is not entitled to a writ of prohibition prohibiting the circuit judge of the county in which the suit is brought from trying the case, on the mere showing that the plaintiff resides in another county and that the cause of action accrued in such other county; it must also show that it does not maintain an agent for the transaction of its usual and customary business in the county in which the suit is brought, and that is a question of fact, which is for the determination of the circuit judge.

## Prohibition.

WRIT DENIED.

*Leahy, Saunders & Barth* for relator.

(1) The title to the Act of 1885, is in conflict with both sections 28 and 34, article 4, of the Constitution, because this title indicates an amendment, whereas the act itself is a repeal. (2) Sec. 7042, R. S. 1909, assuming it to be constitutional, must be construed *in pari materia* with the other service statutes, as was done in the dissenting opinion in the case of Julian v. Kansas City Star, 209 Mo. 35, 97, which became the law in the case of Houston v. Pulitzer Company, 249 Mo. 332, and as was done in the recent case of State ex rel v. Jones, 192 S. W. 980. There is nothing in the language of section 7042 authorizing service of process upon the

Superintendent of Insurance "in all proceedings that may be instituted against such company in any court of this State or in any court of the United States in this State" which says that such company may be sued in any county or city of the State, no matter where the plaintiff, may reside and no matter where the cause of action may accrue. This statute, construed with the other familiar service statutes, means that process may be served in the manner provided from any court of competent jurisdiction, and the history of the statute shows that the optional jurisdiction, now contended for, was never intended. (3) If section 7042 is constitutional and must be construed as contended by respondent in this case as giving a local plaintiff in a case of this character the unrestricted right to select a forum anywhere in Missouri, then it is clearly in conflict with the due process-of-law clause, section 30, article 2 of the Constitution of Missouri, and section 1 of the Fourteenth Amendment to the Constitution of the United States, and also with section 10, article 2 of the Missouri Constitution, declaring that "certain remedy" must be "afforded for every injury to person, property or character," and also in conflict with section 53, article 4, of the Constitution of Missouri, providing: "The General Assembly shall not pass any local or special law . . . (4) changing the venue in civil or criminal cases." Tel. Co. v. Kansas, 216 U. S. 1; Railway v. Green, 216 U. S. 400; Railroad v. O'Connor, 223 U. S. 280; Williams v. Talladega, 226 U. S. 404; Remedy Co. v. Cope, 235 U. S. 197. A foreign corporation is a "person" within the meaning of the Fourteenth Amendment, and entitled to due process of law and the equal protection of the laws. Santa Clara County v. Railway, 118 U. S. 394; Railroad v. Ellis, 165 U. S. 154.

*Fauntleroy, Cullen & Hay* for respondent.

(1)   The argument that the circuit court of Audrain county has no jurisdiction because of inconvenience and great distance from the scene of the

fire has been thoroughly exploded by Gold Issue Company v. Fire Ins. Co., 267 Mo. 524. Fire Ins. Co. v. Gold Issue Co., 37 U. S. Sup. Ct. Rep. 344; Mondou v. Railroad, 223 U. S. 1; Bradbury v. Railroad, 149 Iowa, 51. (2) The statutes as construed are not unconstitutional. A mere direction of a state law that under given circumstances a cause should be tried at one forum instead of another can have no tendency to violate the guarantee of the equal protection of the law, where in both forums the equality of law governs and the equality of administration prevails. St. Ry. Co. v. Snell, 193 U. S. 37. Classification of insurance companies separately from other corporations is not so arbitrary and destitute of reasonable basis as to be obnoxious to constitutional objections. Life Assn. v. Mettler, 185 U. S. 208. The law has been construed so that an insurance company could be sued in any county for more than a quarter of a century and the insurance company agreed to such procedure. Ins. Co. v. French, 18 How. 404; Railroad v. Harris, 12 Wall. 81; Ex parte Schollenberger, 96 N. S. 369; St. Clair v. Cox, 106 U. S. 350; Min. Co. v. Pennsylvania, 125 U. S. 181; Heat Co. v. Clow & Sons, 204 U. S. 289. The rule applies with greater force when, as in the instant case, the company has voluntarily appointed an agent to receive and accept service, and this is emphasized and made plain by the decision of the Supreme Court of the United States in the Gold Issue case, 37 Sup. Ct. Rep. 344. Where a constitutional provision is designed for the protection solely of the property rights of a citizen it is competent for a party to waive the protection and to consent to such action as would be invalid if taken against his will, and the insurance company, by filing its power of attorney, applying for and accepting license from the State of Missouri, and doing business in the State of Missouri, most effectually waived any constitutional objection it otherwise might have to the statute in question. Ashley v. Ryan, 153 U. S. 436; Railway v. Osborne, 193 U. S. 29; Interstate Ry. Co. v. Mass., 207 U. S. 79;

Daniels v. Tearney, 102 U. S. 421. (3) The Gold Issue case, supra, is decisive of every point urged by relator. (4) If a foreign insurance company authorized to do business in this State be deemed a resident of every county in the State for the purpose of service, then under the first subdivision of section 1751, it is subject to suit in any county, because every county is the "county of defendant's residence." If a foreign insurance company be deemed a non-resident within the meaning of the process statutes, then the place of suit is governed by the fourth subdivision of section 1751, which provides that "when all the defendants are non-residents, suit may be brought in any county in the State." The foreign insurance company is, for the purpose of service, a resident of each county. (5) Foreign insurance companies must be classed as either residents or non-residents within the meaning of the venue statutes. If they are classed as residents, then they may be sued in any county in the State. If we give no force and effect to section 7042 and give no force and effect to the first clause of section 1751, yet we are bound to consider the fourth clause of section 1751, and if foreign insurance companies are classed as non-residents, then it necessarily follows, by virtue of the fourth subdivision of said section, that they are subject to suit in any county in the State, because they are non-residents. So it matters not in this proceeding, whether they are classed as residents or non-residents, the inevitable conclusion is that they are subject to suit in any county in the State. Suits against non-residents may be brought in any county in the State. Sec. 1751, R. S. 1909; Baisley v. Baisley, 113 Mo. 549; Greeley v. Railroad, 123 Mo. 157; Gabriel v. Mullen, 111 Mo. 119; Accident Co. v. Reisinger, 43 Mo. App. 576. The fact that a foreign corporation is licensed to do business in a State other than that of its incorporation does not domesticate it. It is a non-resident of every State except that which granted its charter. Constitution, art. 2, sec. 10; Secs. 1751, 1754, R. S. 1909; Herryford v. Ins. Co., 42 Mo. 148; Stanley

v. Railroad, 62 Mo. 511; Ex parte Schöllenberger, 96 U. S. 377; Railroad v. Estill, 147 U. S. 593.

FARIS, J.—This is an original proceeding by prohibition, whereby it is sought to prohibit respondent, as judge of the circuit court of Audrain County, from taking further action in a certain cause wherein the St. Louis Carbonating & Manufacturing Company is plaintiff, and relator herein is defendant.

The facts necessary to an understanding of the points involved are few and simple, and run substantially thus: The said St. Louis Carbonating & Manufacturing Company (hereinafter, for brevity, called "Carbonating Company") is a Missouri corporation, having its principal office and place of business in the city of St. Louis. At and prior to the 22nd day of May, 1917, the Carbonating Company held a policy of fire insurance in the relator company, for the sum of $1000, which policy insured for one year certain property of the Carbonating Company, located in the city of St. Louis. This property so covered by the insurance policy aforesaid, was on the date stated above damaged by fire. Thereafter, and upon relator's refusal to pay the sum set out in said policy of insurance, plaintiff brought suit thereon in the circuit court of Audrain County, Missouri. Summons in said action was issued out of the Audrain County Circuit Court, sent to the sheriff of Cole County, and by said sheriff served upon W. K. Chorn, Superintendent of the Insurance Department of the State of Missouri.

Thereafter, and on the 3rd day of September, 1917, relator, who was the defendant in the insurance action, filed in the circuit court of Audrain County what it denominates a special entry of appearance for the purpose of excepting to the jurisdiction of that court, and a motion to quash service and dismiss the cause for want of such jurisdiction.

Pertinent parts of relator's said motion, which more adequately and correctly than any mere excerpt therefrom would do, state relator's position and the

precise nature of its attack upon the jurisdiction of the Audrain Circuit Court, read thus:

"That the bringing and maintenance of this suit in this honorable court is an abuse of the jurisdiction of this court, designed by plaintiff to employ a judicial agency in the State of Missouri to compel defendant to submit to disadvantages and inconveniences in the trial of its just defenses to plaintiff's alleged cause of action.

"That by Section 1 of the Fourteenth Amendment to the Constitution of the United States it is provided: 'No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.'

"That Section 30, Article 2 of the Constitution of Missouri, provides: 'That no person shall be deprived of life, liberty or property without due process of law.'

"That Section 10, Article 2, of the Constitution of Missouri, provides: 'The courts of justice must be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice, should be administered without sale, denial or delay.'

"That Section 53, Article 4, of the Constitution of Missouri, provides that: 'The General Assembly shall not pass any local or special law . . . '(4) Changing the venue in civil or criminal cases.'

"That the bringing and maintenance of this suit in this honorable court by the plaintiff is in pursuance of the exercise by said plaintiff of an asserted right to institute its alleged cause of action in any county in this State without restriction and according to the choice and judgment of plaintiff as to which county in said State would best suit said plaintiff's purposes and interests and for the purpose of compelling defendant to make its defenses away from the scene of the facts and the evidence and in a community where the

jurors are drawn generally and usually from the class engaged in agricultural pursuits and unfamiliar with the usual and ordinary conditions surrounding the issue and performance of contracts or policies of fire insurance in said city of St. Louis; that, therefore, there has been no proper or lawful service of summons in this cause upon this defendant, and that said attempted service is null and void for the reasons herein set forth.

"That under and by virtue of the laws of this State (Revised Statutes 1909, section 7042), defendant delivered, prior to the institution of this suit, to the Superintendent of Insurance of the State of Missouri, a power of attorney authorizing said officer to receive the service of summons in suits instituted against it in the courts of this State in compliance with the laws of Missouri, as averred in said petition. Defendant further states that said issue and delivery of summons herein to said officer was unauthorized by said statute and said power of attorney for the reason that said suit was not instituted in said city of St. Louis, State of Missouri, wherein plaintiff's alleged cause of action accrued, and wherein the same should be prosecuted."

This motion of relator to dismiss for lack of jurisdiction, and to quash service for the same reason, was overruled, and the circuit court of Audrain County was proceeding, as relator avers, with the hearing of said cause; whereupon relator applied to this court and we issued our preliminary rule in prohibition. To this preliminary rule, respondent duly made return, which return admits all material facts to be as pleaded in relator's petition. Thereupon relator moved for judgment upon the pleadings, which leaves the cause to be determined upon the law as applied to the facts stated in relator's petition. The unconstitutionality of Section 7042, Revised Statutes 1909, is also urged by relator, in addition to matters set out in the excerpt which we quote from its motion and which are bottomed on averred lack of jurisdiction. The facts making

clear this constitutional attack will be set forth fully in our discussion of the case, as will also such further facts as may be necessary to make clear what we shall say.

Counsel for relator insist that the precise question involved in this action is one of first impression in this State. There have been, they concede, suits brought by non-residents against foreign insurance companies (Cf. Gold Issue M. & M. Co. v. Pennsylvania Fire Ins. Co., 267 Mo. 524), wherein the contention was made that no court of this State had jurisdiction; cases wherein a non-resident sued in a personally selected, or hand-picked forum a licensed and localized foreign business corporation (State ex rel. v. Jones, 270 Mo. 230, 192 S. W. 980); likewise a case wherein an action was brought before a justice of the peace of one county by a resident of another county against a licensed foreign insurance company (Meyer v. Insurance Co., 184 Mo. 481); but no case such as this, wherein it is admitted that jurisdiction lies at the domicile of plaintiff where the cause of action accrued, but denied that it lies in each of the 114 counties of this State at plaintiff's arbitrary selection.

Relator's contentions are two: (a) The Act of 1885 (Laws 1885, pp. 183-184), now Section 7042, Revised Statutes 1909, is unconstitutional and void, because the title thereof recites that it is proposed to amend the then existing law, to-wit, Section 6013, Revised Statutes 1879; whereas, what was actually done by said act in the body thereof was to repeal the whole of said Section 6013, and enact a new section (now Section 7042, supra) in lieu thereof; and (b) that the circuit court of Audrain County got no jurisdiction to hear and determine this case, because the plaintiff in the action to which the instant suit is ancillary is a resident of the city of St. Louis, the cause of action accrued in said city, and defendant is a foreign but licensed insurance company, which has duly executed and filed a power of attorney authorizing the State Superintendent of Insurance to receive and ac-

cept service of process in all actions brought against it. These in their order.

I. We may pass over the contention made that Section 7042 is unconstitutional on account of alleged defects existing in the title of the act when it was originally passed in 1885; because, even if this point be well taken, it can in no way affect or aid relator. For relator has already filed a power of attorney with the State Superintendent of Insurance, making this officer its attorney in fact for the purpose of receiving or accepting service of all process in actions brought against it in this State. If therefore the Act of 1885 is wholly void, as the alleged infirmity, if existent, would render it, it did not affect or repeal Section 6013, Revised Statutes 1879, which provided that a foreign insurance company, as a condition precedent to being authorized to transact business in this State, must execute and file a power of attorney designating and authorizing *some person as its attorney in fact* to accept and receive service of process, and therefore said Section 6013 is yet in force. [36 Cyc. 1056.] No reason appears why, absent the provision in said Section 7042, which specifically designates the State Superintendent of Insurance as the person who shall be named as such attorney in fact, such superintendent could not have been named as such attorney in fact under the provisions of said Section 6013. Since relator saw fit voluntarily to designate as its attorney in fact, the very person who is pointed out by the Act of 1885 as being the only person to be so designated, and since under Section 6013, Revised Statutes 1879, *which is in force if Section 7042, Revised Statutes 1909, is void,* the State Superintendent could have been so designated, it can make no very material difference to relator whether such designation of its attorney in fact was made pursuant to the Act of 1885, or pursuant to the provisions of said Section 6013. Manifestly in such situation the contention of relator as to the unconstitutionality of the Act of 1885, is untenable.

*Validity of Statute.*

For conceding for the sake of the argument that its
contentions in this behalf are well taken from an aca-
demic point of view, yet its designation of the State
Superintendent of Insurance as its attorney in fact
having been fully authorized by the law existing upon
the subject when the Act of 1885 was passed, relator
is in no wise hurt or affected by the latter act, and
so it can not be heard to urge its unconstitutionality.
[City of Lexington ex rel. v. Bank, 165 Mo. 671; 36
Cyc. 1056.]

II. The pertinent language of section 6013, Revised
Statutes 1879, is *verbatim* with that of the Act of 1885,
now Section 7042, Revised Statutes 1909. Both sec-
tions provide that "in all proceedings that may be in-
stituted against such company, in any court
History of        of this State or in any court of the United
Statutes.         States in this State," service of process
therein may be had upon the attorney in fact, which the
company shall designate by its filed power of attorney.
Under the existing statute the Superintendent of In-
surance must be the person so designated, while under
the former statute any person could be named as such
attorney in fact. So far as it is apposite to this dis-
cussion it will make no difference whether we look to
the old statute or to the new statute. We will disre-
gard the constitutional question, for the reasons stated,
and look to Section 7042, Revised Statutes 1909.

We think it is obvious beyond cavil that Section
7042, supra, is a *service statute,* and not, what we may
denominate for convenience, a *venue statute.* This
section nowhere provides, nor attempts to provide
where any action shall be instituted. Actions having
been brought in any county of the State wherein
*caeteris paribus,* the proper venue attaches, service of
process therein may, under Section 7042, be had upon
the State Superintendent of Insurance. This view we
think follows the very plain language of the section.
Cogent and compelling toward the correctness of this
view also is the fact that, when the provision requiring

foreign insurance companies to designate an agent on whom service could be had first came into our statutes, it provided that the resolution of the board of directors should authorize service upon such designated agent in all suits against the company "in any court of this State having *competent jurisdiction.*" [R. S. 1855, page 885, Sec. 1.] Besides, as we shall hereafter demonstrate, if it be construed as a statute prescribing the venue in *actions against foreign insurance companies,* it would contravene the inhibition contained in Subdivision 4, of Section 53, of Article 4, of the Constitution.

The point here vexing us is in its final analysis a question wholly of venue, otherwise we could close the discussion and refuse to issue our absolute writ in prohibition out of hand. For if the circuit court has jurisdiction to hear and determine the case out of which the instant prohibition case grew, if the service is good, then the proceeding to hear it upon a bad service is but a mere error capable of correction upon appeal, and *ordinarily* prohibition will not lie. But if upon no sort of service the Audrain Circuit Court could acquire jurisdiction to hear and determine the case, prohibition will lie. So whether such absolute lack of jurisdiction shall arise from the fact that service of process issuing out of the circuit court of Audrain County, when served upon the State Superintendent of Insurance, conferred no jurisdiction, or whether such lack of jurisdiction arose from lack of statutory venue in that county, makes no particular difference. It is at best a bare question of *venue.* If the venue under the facts is in the circuit court of Audrain County, then the writ of prohibition should be quashed; if it is not in said court, then the writ should be made absolute.

Venue is fixed by either Section 1754, or by Section 1751, Revised Statutes 1909, or by both of these sections construed in *pari materia.* If plaintiff in the suit against relator, wherein further proceedings are sought by the instant case to be prohibited, may, being a resident of the city of St. Louis, where its cause of action accrued, pick and choose at its own arbitrary will any

of the circuit courts of any of the 114 counties of the State as a' forum having plenary jurisdiction to hear and determine this case, the writ herein should be quashed. *Imprimis,* we think it is important to determine whether Section 1751, Revised Statutes 1909, is to be construed *in pari materia* with Section 1754, or whether the latter section is not the sole one to be considered in determining the place where a' corporation, foreign or domestic, is to be sued.

Section 1751 first came into our statutes substantially in its present form in 1835. [R. S. 1835, p. 451, sec. 4.] It then (and we shall seek to show it always has) specifically applied to venue in actions by and against persons only. It then contained only the first and fourth subdivisions of the present statute, substantially, however, in their present forms. Before 1835, the provisions of our statutes governing venue were meager, but they fixed venue at the county in which the defendant resided, unless the latter were found in plaintiff's county, in which event the action could be brought therein. [Sec. 3, p. 622, Laws 1825.] Corporations were then, *semble,* sued in all respects as were persons. [Laws of Missouri, 1825, p. 223, secs. 1 and 2; R. S. 1835, secs. 1 and 2, p. 125.]

No · material changes were made in 1845 in the statute fixing the venue for actions between persons (R. S. 1845, p. 805, sec. 5), but it is worthy of note and we think decisive of this point that in the Revision of 1845 (Sec. 4, p. 238, R. S. 1845), it was provided that "suits against corporations shall be commenced in the proper court of the county wherein the general meetings of the members, or the officers of such corporation, have usually been holden, or by law ought to have been holden." In other words, venue was to be laid in the county of the chief office of such corporation. It is also worthy of note that the statute fixing venue in civil actions in cases between persons was found among those provisions dealing with practice at law in civil cases, while the like statute fixing the place for bringing suit against a corporation was found in the

chapter devoted to corporations. Of course, these statutes all dealt with suits against domestic corporations, for only such could be then sued in this State by ordinary summons. [Robb v. Railroad, 47 Mo. 540; Middough v. Railroad, 51 Mo. 520.]

In 1855, there appeared for the first time in a revision, Subdivisions two and three, now found in Section 1751 of the present statute (R. S. 1885, p. 1220, sec. 1.); so that our venue statutes governing actions between persons then assumed so far as is here apposite, the very form in which Section 1751, Revised Statutes 1909, now appears. Section 1754, in its present form precisely (barring the subsequent amendment of 1903, specifically applicable to railroads), came into our statute books in 1855. [R. S. 1855, p. 377, sec. 4.] Again it is worthy of note that said Section 1751, of our present law, appeared under the head of Practice in Civil Cases, while said Section 1754 appeared under articles referring wholly to corporations. While no change in apposite substance has ever been made in the two sections of the statute under discussion, their said separate places in our statutes under the headings respectively of "Practice in Civil Cases" and "Corporations" were retained until the revision of 1909 (Cf. G. S. 1865, sec. 1, p. 653, and sec. 26, p. 330; R. S. 1879, sec. 750, and sec. 3481; R. S. 1889, sec. 2529, and sec. 2009; R. S. 1899, sec. 997, and sec. 562), when for the first time, as a mere matter of convenience in arrangement and codification, these two sections were taken from their former places in our statutes and placed in juxtaposition under the chapter governing civil procedure.

III. So, from the history of these two sections, it is manifest that Section 1751 refers solely to venue in suits between persons, while Section 1754 refers solely to the place of bringing suits against corporations. We may further narrow the limits of the inquiry by saying that said Section 1754 applied of necessity only to domestic corporations. No changes have ever been made in this section

Service Statute.

so as to make it apply *in terms* to foreign corporations. That it *does so apply no one will deny*, but it has been made to apply by bringing the foreign corporations within the purview of the section by the expedient of enacting other statutes requiring license and localization and the establishment of offices and agents, or by such corporations voluntarily establishing agencies, where since 1855 service could be had on them. Before the passage of the statute of 1855, foreign corporations could not be sued in this State (except by attachment, with which here we are not concerned); suits had to be brought against them in the foreign state of their domicile. We have already seen that the special service statute, now Section 7042, supra, was enacted in the same year at which the venue statute governing the place of bringing suits against corporations was passed. [R. S. 1855, p. 885, sec. 1.] Since the year 1855, foreign insurance companies doing business in this State can be sued in all courts of *competent jurisdiction* by serving the agent voluntarily designated, as such, by a power of attorney and a resolution of the company's board of directors.

Since, as we think has been made clear by what is said above, Section 1754 fixes the venue for suits against foreign insurance companies, is such action to be brought where the action accrued as provided by the first clause of said Section 1754, or may such action at the election of the plaintiff therein, be brought, either in such county, "or in any county where such corporation shall have or usually keep an office or agent for the transaction of their usual and customary business?"

We are constrained to hold that such corporations are suable either in the county wherein the cause of action accrued, or in any county where such foreign corporation has an agent for the transaction of its usual and customary business. This is what the statute says, and we are unable to find any authority to sustain any other view which would not offend the Constitution. For, while it is true that this court has repeatedly ruled that when a foreign insurance company

has designated an agent by power of attorney pursuant to statute (Sec. 6013, R. S. 1879; Sec. 7042, R. S. 1909), service of process must be had upon such designated agent, and thereafter no valid service can be had upon any other agent (Baile v. Insurance Co., 68 Mo. 617; Middough v. Railroad, 51 Mo. 520; Stone v. Insurance Co., 78 Mo. 655; State ex rel. v. Grimm, 239 Mo. 1. c. 161; Gold Issue M. & M. Co. v. Insurance Co., 267 Mo. 1. c. 575), yet neither such ruling, nor the statute (Sec. 7042, supra), on which such ruling is based, serves to repeal, even by the remotest implication, the provisions of Section 1754, supra, the language of which we follow in making this ruling. It is, we think, manifest that if Section 7042, supra, be so construed as to destroy that clause of Section 1754, supra, which permits suits to be brought against foreign corporations in any county wherein such company has an agent for the transaction of its customary and usual business, it is, unconstitutional. Such construction would make of it a special statute which changes the venue in civil cases, against the direct inhibition of Subdivision 4, of Section 53, of Article 4, of our Constitution. For such a construction would have the effect to change said Section 7042, to the extent noted, into a venue statute governing alone the venue in cases brought against foreign insurance companies, thereby rendering it obnoxious to the Constitution in the behalf mentioned. But for this cogent consideration, the rule that the reason having failed, the rule itself fails, could well be invoked, thus bringing about the holding that all suits against a foreign insurance company must be brought where the cause of action accrued.

There have been much *obiter dicta* and loose writing upon the effect of said Section 7042, upon the place of bringing suits against foreign insurance companies which are licensed to do business in this State. We think that nothing can be plainer, than that said section has not in any, or in the least degree affected the venue in such actions. Venue is still to be determined by Section 1754 alone; service of process alone is to

be governed by said Section 7042. Suit cannot be brought by a given plaintiff in either one of the 114 counties of the State or in the city of St. Louis; but suit must be brought either in the county wherein the cause of action accrued, or in any county wherein the foreign insurance company has and maintains an agent for the transaction of its usual and customary business. All other corporations of whatever kind are so suable, and we have no warrant to make any distinction either against, or in favor of a foreign insurance company. It is too plain for argument that any other view or construction of Section 7042, makes a special venue Statute of it. It is also clear that all special venue statutes are forbidden by our Constitution. [Sub. 4, Sec. 53, Art. 4, Constitution.] By reason of the language used in said Section 53 of the Constitution we are not allowed to apply the permissible classification doctrine of Subdivision 32 of said Section 53, to a solution of the difficulty presented. This is so for the reason that said Section 53, of Article 4, of our Constitution, expressly forbids the General Assembly to "pass any local or special law . . . changing the venue in civil or criminal cases;" thus by the very language used excluding the privilege of permissible classification which is given my Subdivision 32 of said Section 53, in all matters of legislation, except the things wherein special laws are by the preceding thirty-one subdivisions expressly forbidden.

Unfortunately, the character of the business done by insurance companies and the manner in which perforce such business is done accentuates and increases the apparent hardship of such a rule. Ordinary business companies as a rule either transact business in but one county or have but one agent to transact their usual and ordinary business. The application therefore of the identical rule to the ordinary foreign business corporation works no apparent hardship. It is only when the rule is applied to a company, which by reason of the nature of its business, must maintain agencies in many counties for the transaction of its usual and

customary business, that the rule seems to work out as here outrageous hardships and well-nigh disgraceful situations. These considerations are not for us, however, but for the Legislature, if so it be, that body is able to solve the difficulty, and in solving it escape the ban of the Constitution.

It is, we think, obvious from what is said above that Section 7042, supra, is not invalid for that it transgresses the "due process of law" clause of the Federal Constitution. This conclusion follows inevitably the reasoning which we are above constrained to apply to the condition presented. In other words, a foreign, but locally licensed, insurance company is suable only where any other corporation is suable and that is all the Federal Constitution requires, on the phase involved.

As forecast, neither the case of Baile v. Insurance Co., 68 Mo. 617; Stone v. Insurance Co., 78 Mo. 655; Meyer v. Insurance Co., 184 Mo. 481; State ex rel. v. Grimm, 239 Mo. 135, nor Gold Issue M. & M. Co. v. Insurance Co., 267 Mo. 524, is precisely in point. All of these cases may be distinguished. The Stone case, supra, because, the plaintiff resided in Johnson County, the cause of action accrued in Johnson County, and the suit was brought in Johnson County. So what is said therein to the effect that suit can in such case be brought in any one of the 114 counties of the State, wherein a comfortable and convenient jury may be found at the selection and election of plaintiff, is pure *obiter dictum*.

The case of Baile v. Insurance Co., supra, merely holds that Section 7042 is the sole service statute for the service of foreign insurance companies, and that other statutes providing for service upon persons other than the agent designated by the company's filed power of attorney are inapplicable.

In both the Grimm case, supra, and the Gold Issue Mining Company case, both the plaintiff and the defendant were non-residents. The Meyer case, supra, which followed the bald *dicta* in the Stone case, seems upon

principle to be erroneous, in so far as it flatly holds that a foreign insurance company licensed to do business in this State may be sued in any county in this State. Such rule should be modified to the extent that the venue should be limited to the county in which the cause of action accrued, or to a county in which such company has an agent for the transaction of its usual and customary business. But the Meyer case involved the construction of the statute which prescribes venue under the procedure governing the practice before justices of the peace. [Sec. 7399, R. S. 1909.] Whether that case was correctly decided, and whether clause two or clause four of the above section fixes the place of bringing a suit before a justice of the peace against a foreign but licensed insurance company, we are not here called on to rule.

There is no showing in the instant case whether the relator has, or has not, an agent in Audrain County for the transaction of its usual and customary business. If it has such agent, the circuit court of that county has jurisdiction to hear and determine the case in dispute and to which the instant proceeding is ancillary. For jurisdiction in such event would then depend upon a question of fact, which fact is for the determination of the learned respondent. [State ex rel. v. Shields, 237 Mo. 329; State ex rel. v. Mills, 231 Mo. 493.] In such case prohibition will not lie. It follows that our writ herein was improvidently issued and ought to be quashed. Let this be done. *Walker, J.,* concurs; *Graves, C. J.,* concurs in separate opinion; *Bond, Blair* and *Williams, JJ.,* concur in result; *Woodson, J.,* dissents in opinion filed.

GRAVES, C. J. (concurring)—I concur in the result and most of the opinion in this case. I agree that Section 7042 is a service statute and not a venue statute. I feel compelled to agree that (under existing statutes) a foreign insurance company cannot only be sued in the county wherein the cause of action arose, but may likewise be sued in any county wherein it has

an agent for the transaction of its ordinary and usual business. I do not concur in that portion of the opinion which, on the assumption that Section 7042 was a venue statute, denounces it as unconstitutional, on the theory that it would violate Clause 4 of Section 53, Article 4, of the Constitution. I think that there might be a valid classification of corporations as to the venue of actions. But holding, as we do, that this Section 7042 is not a venue statute, what is said on the other matter is largely *arguendo,* and not really in the case. With this exception, I concur in the opinion, but believe that the iniquity of the situation should be remedied by prompt legislative action. There is no good reason for permitting the present status to remain.

WOODSON, J. (dissenting)—According to my views the writer of the majority opinion has fallen in error by assuming that Section 7042, Revised Statutes 1909, is only "a service statute," and not what we may denominate a "venue statute."

In passing, I wish to state that apparently my learned associate who wrote the majority opinion in this case has overlooked the fact that he concurred in the result of the opinion in the case of the Gold Issue Mining & Milling Co. v. Pennsylvania Fire Insurance Co., 267 Mo. 524, which was affirmed, on writ of error, by the Supreme Court of the United States in the case of Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co., 243 U. S. 93, where it was expressly held that said Section 7042 was both a venue and service statute. That suit was brought under that statute and not under Sections 1751 and 1754, Revised Statutes 1909, of the general practice act, necessarily holding that said statute not only provided for service of process, but also prescribed where the suit should be instituted, which was in any county in the State, as will later be especially noted.

**Gold Issue Mining Case.**

Moreover, ever since the enactment of this statute in its present form, which was in 1885 (Laws 1885, p.

183), it has been considered by the Bench and Bar of the State, as well as by Insurance Department, as being both a service and a venue statute. I am somewhat familiar with the litigation of this State which has reached this court and the various courts of appeals, and I know of no case where the venue thereof was not determined according to the provisions thereof, and service had as provided for therein. This alone should be considered as strong evidence of the legislative intent. But be that as it may, I will briefly consider some of the views expressed in the majority opinion in the following paragraphs.

II. After the majority opinion states that Section 7042 is a service and not a venue statute, it then adds:

**Venue Statute.** "This section nowhere provides, nor attempts to provide, where any action shall be instituted."

In my opinion my learned brother is clearly in error in that statement. Let me copy a portion of that statute:

"Any insurance company not incorporated by or organized under the laws of this State, desiring to transact any business by any agent or agents in this State, shall first file with the Superintendent of the Insurance Department a written instrument or power of attorney, duly signed and sealed, appointing and authorizing said superintendent to acknowledge or receive service of process issued from any court of record, justice of the peace, or other inferior court, and upon whom such process may be served for and in behalf of such company, in all proceedings that may be instituted against such company, in any court of this State or in any court of the United States in this State, and consenting that service of process upon said superintendent shall be taken and held to be as valid as if served upon the company, according to the laws of this or any other State. Service of process as aforesaid, issued by any such court, as aforesaid, upon

the superintendent, shall be valid and binding, and be deemed personal service upon such company."

By this reading it is seen that the Superintendent of Insurance is authorized to accept service of process for all foreign insurance companies doing business in this State *issued from any court of record, etc., in all proceedings that may be instituted against such company in any court of this State.* This language clearly embraces all the courts mentioned in that statute in all the counties of the State, and is not qualified or limited by any such words as are generally used when the Legislature intends that one section of the statute is to be qualified or limited by another. Had it been the intention of the Legislature to qualify or limit the counties in which suits against foreign insurance companies might be brought to those mentioned in Sections 1751 and 1754, it clearly would have used some appropriate language indicating that intention, as was done by Section 1751, Revised Statutes 1909.

According to the ruling in the case of State ex rel. v. Jones, 270 Mo. 230, 192 S. W. 980, Sections 1751 and 1754 do not apply to the case at bar for the reason therein stated. Those sections only apply to the venue of actions against non-residents in general, etc., and in express terms they exclude their application to all cases where the law otherwise provides for service; and as previously shown, Section 7042 does "otherwise provide" where suits of this character shall be brought, namely, in any county in this State; but as previously stated, the converse of the proposition is not true.

III.  But should we, for the sake of argument, take Judge FARIS's view of Section 7042, and hold it is only a service statute, and hold that Sections 1751 and 1754, Revised Statutes 1909, regarding the general venue of cases, are controlling, still if we give effect to other well settled rules of law which are in full force in this and many of the other states, we must still hold that this *particular* suit was properly brought in the circuit court of Audrain County.  I say

Section 7042.

274 Sup. 33.

this because under Sections 7040, 7041 and 7042, Revised Statutes 1909, a foreign insurance company doing business in this State is a resident of every county hereof. Such is the law here and elsewhere, which I will briefly note.

In the case of New England Mutual Life Ins. Co. v. Woodworth, 111 U. S. 138, l. c. 145, the Supreme Court of the United States expressly held that a foreign insurance company licensed to do business in the State of Illinois under a statute similar to ours "must be regarded as having a domicile there." And in discussing this same question this court in the Gold Issue case before mentioned, on page 575, used this language: "And 'within contemplation of the statute relating to service of summons upon foreign insurance companies, such companies are regarded as residing in each county of the State.' [State ex rel. v. Grimm, 239 Mo. l. c. 166; Meyer v. Ins. Co., 184 Mo. l. c. 486.] And 'it must be conceded that the only mode by which a foreign insurance company can be served with process in this State is by the method provided for in said Section 7042.' [State ex rel. v. Grimm, 239 Mo. l. c. 160; Baile v. Equitable Fire Ins. Co., 68 Mo. 617; Middough v. Railroad, 51 Mo. 520.]"

That being true, then the relator was a resident of Audrain County at the time the suit on the policy mentioned in this case was instituted against it, and therefore, the suit was properly brought according to the language of the first subdivision of Section 1751, Revised Statutes 1909, in Audrain County, which provides that "when the defendant is a resident of the State, either in the county within which the defendant resides, or," etc.

But the fallacy of saying Sections 1751 and 1754 govern in this class of cases is shown by the fact that a cause of action might accrue against a foreign insurance company doing business in this State in a county wherein the insured does not reside, and in which the company has no agent; in such a case, the insured would have to leave his own home and sue where the

cause of action accrued, or go to some county where the company has an agent, and bring suit there. This I submit is contrary to the whole spirit of our insurance laws. The policy of all of the states has been to make all such companies residents of the states and of all the counties thereof, in order that no question might arise as to the proper place of bringing suit, and to enable the insured to litigate his claims at home.

In discussing this question the Supreme Court of the United States in the case of New England Mutual Life Ins. Co. v. Woodworth, 111 U. S. 138, l. c. 144, said:

"In the growth of this country, and the expansions and ramifications of business, and the free commercial intercourse between the States of the Union, it has come to pass that large numbers of life and fire insurance companies and other corporations established with the accumulated capital and wealth of the richer parts of the country, seek business and contracts in distant States which open a large and profitable field. The inconveniences and hardships resulting from the necessity on the part of creditors, of going to distant places to bring suits on policies and contracts, and from the additional requirement, in case of death, of taking out letters testamentary or of administration at the original domicile of the corporation debtor, in order to sue, has lead to the enactment in many States of statutes which enable resident creditors to bring suits there against corporations created by the laws of other States."

Then follows what I have heretofore quoted therefrom regarding what the court said regarding the Illinois statute making all such companies residents of that State.

Strictly speaking, that statute alone cannot make such a foreign corporation a resident of this State, but when the terms thereof are accepted by such a corporation, the two combined, or the transaction of business in this State by such a company in violation of our statutes (see cases previously cited), constitutes it a

resident of this State within the meaning of our laws, and by becoming a citizen it submits itself to the jurisdiction of our courts, just as a natural person would do by coming within our territorial limits; and as a condition precedent to its right to come into this State and transact business, it must agree that process which issues out of all courts mentioned in Section 7042, Revised Statutes 1909, in all the counties of this State may be served upon the Superintendent of Insurance in their behalf. If, under those conditions it be true, as the majority opinion holds, that Audrain County is a "hand-picked venue" in which the plaintiff in the original cause brought its suit, I have only this answer to make, the law authorizes him to make the selection, and the relator here, the defendant there, in consideration of its right to do business in this State, agreed that the plaintiff there might make that selection and should not at this late day be heard to question the validity of that agreement.

This has been the unquestioned law of this State for more than a third of a century, and I now see no good reason for this court, at this late date, to change or modify it.

IV.   I am also of the opinion that the majority opinion is in direct conflict with the principles of law announced in the following cases:   Gold Issue Mining & Milling Co. v. Pennsylvania Fire Insurance Co., 267 Mo. 524; Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co., 243 U. S. 93; Baile v. Insurance Co., 68 Mo. 617; Stone v. Insurance Co., 78 Mo. 655; Meyer v. Insurance Co., 184 Mo. 481;   State ex rel. v. Grimm, 239 Mo. 135.

Resident Agent.

The majority opinion in this case holds that a resident of this State cannot sue a foreign insurance company doing business in this State *in any county thereof* without, first, the cause of action accrued against the company in that county; or, second, without such company has an agent of *its own located therein,* as distinguished from the Superintendent of Insurance, who

is alone authorized by Section 7042, Revised Statutes 1909, to accept service for all such companies in all suits of this character brought in any court of this State; and in the consideration of this question it must be borne in mind that even though such company should have an agent in every county of the State, yet the law nowhere authorizes service of process in any such suit upon any such an agent; and the majority opinion, as I understand it, concedes this to be true, at least it does not hold that service can be had in such a case except upon the Superintendent of the Insurance Department, whether the plaintiff is a resident or non-resident of this State.   In other words, there is no provision made for service upon the compnay's own agent, but it must without exception be made upon the Superintendent of Insurance in all such cases, regardless of the residence of the plaintiff.

In the light of this law I am at a loss to know why any significance whatever should be attached to the fact that the company  has or may have an agent in any such county, because, as previously stated, under the statutes and the majority opinion, such an agent has nothing more to do with the case or the service of the process than would a totem pole erected in the center of each county of the State.

All the cases just cited are insurance cases and hold that the suit may be brought in any county in the State.   And the mere fact that the plaintiffs in some of them were non-residents of the State does not distinguish them in principle from those where the plaintiffs were residents.   For instance, in the case of Gold Issue Mining & Milling Co. v. Pennsylvania Fire Insurance Co., supra, and Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co., supra, the plaintiff was a non-resident, while in the case of Stone v. Insurance Co., 78 Mo. 655, which was cited with approval by the Supreme Court of the United States, in the case of New York, L. E. & W. Railroad Company v. Estill, 147 U. S. 591, the plaintiff was a resident of this State; and in each of those cases this court and

the Supreme Court of the United States held that the plaintiff, whether resident or non-resident, could bring the suit in any county in this State.

The case of Railroad v. Estill, supra, was not against an insurance company, but against a railroad company, yet notwithstanding that fact the court in that case held that under Sections 3489 and 3481, the same as Sections 1751 and 1754, Revised Statutes 1909, the plaintiff might sue the defendant in Saline County and have service of process in any county of the State where the defendant had an agent.

While in my opinion that case correctly construed the statutes mentioned, yet for the reason stated by this court in the cases of State ex rel. St. Joseph Lead Company v. Jones, supra, the case of Stone v. Insurance Co., supra, was not an authority in support of the ruling announced by the learned court in that case, for the reason that the Stone suit was against a foreign insurance company and service was had under Section 6013, Revised Statutes 1879, which in so far as is here material was practically the same as Section 7042, Revised Statutes 1909, which, in substance, provides that suit may be brought in any county in the State, and service had upon the company's agent appointed for that purpose. The former opinion was construing the general practice act of the State, while the latter was construing the statute specially applicable to service of process in suits against foreign insurance companies. But independent of that, the Supreme Court of the United States in the case of New York, L. E. & W. Railroad Company v. Estill, supra, clearly held that such legislation was valid, and gave effect to the construction it understood this court had placed upon it.

Section 6013, Revised Statutes 1879, as previously stated, was amended in 1885, so as to read as we now have it in Section 7042, Revised Statutes 1909, which undertook to make it plain that foreign insurance companies doing business in this State might be sued in any county in the State, and service had upon the

Superintendent of Insurance, which was in harmony with the previous rulings of this court and that of the Supreme Court of the United States in the cases cited.

It was upon this principle that the Gold Issue Mining cases were decided.

To hold otherwise, that is that a non-resident of this State may sue a foreign insurance company doing business in this State in any county hereof and that a resident cannot sue such a company in any such county, would clearly violate Section 1 of the Fourteenth Amendment of the Constitution of the United States, which provides that: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty, or property without due process of law, or deny to any person within its jurisdiction the equal protection of the laws." Also Section 2 of Article 4 of the Constitution of the United States, which provides that: "The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." Likewise such a ruling would violate section 30 of Article 2 and Section 53, Subdivision 26, of Article 4 of the Constitution of Missouri. The first provides: "That no person shall be deprived of life, liberty or property without due process of law," and the latter prohibits the Legislature from granting "to any corporation, association or individual any special or exclusive right or privilege or immunity."

Judge SHERWOOD, in the case of In re Flukes, 157 Mo. 125, in discussing the constitutionality of Section 2356, Revised Statutes 1899, which under a heavy penalty prohibited any creditor residing in this State from sending or transferring any note, account, chose in action, etc., due him by a resident wage-earner of this State, to a person in another State for the purpose of being sued thereon by attachment, and garnisheeing the wages of such wage-earner, in the courts of the State, when such wages were exempt from execution under the laws of

**Due Process of Law.**

this State, after quoting the constitutional provisions previously mentioned, held that said statute violated all of said constitutional provisions, and among other things said:

"As is said by an eminent Judge: 'The rights thus guaranteed are something more than the mere privileges of locomotion; the guarantee is the negation of arbitrary power in every form which results in a deprivation of a right.' [2 Story on Const. (5 Ed.), sec. 1950.] 'These terms, "life," "liberty," and "property," are representative terms and cover every right to which a member of the body politic is entitled under the law. Within their comprehensive scope are embraced the right of self-defense, freedom of speech, religious and political freedom, exemption from arbitrary arrests, the right to buy and sell as others may, —all our liberties—personal, civil, and political; in short, all that makes life worth living, and if none of these liberties can any one be deprived, except by due process of law.' [State v. Julow, 129 Mo. 163.]

"Now, as elsewhere stated, each of the rights heretofore mentioned, carries with it as its natural and necessary coincident, all that effectuates and renders complete and full, unrestrained enjoyment of that right. And it has been determined by this court and numerous other courts that no one can be deprived of a vested right of action, without infringing on that provision of our Constitution and that of the United States respecting the deprivation of life, liberty and property without due process of law. [Leete v. State Bank of St. Louis, 115 Mo. 184; s. c., 141 Mo. 584.]

"And this court has also determined that it does not lie in the power of the Legislature to make that act a crime which consists in the bare exercise of a simple constitutional right. [State v. Julow, supra.] The right to bring a suit to enforce a contract is part and parcel of that contract, and one of the essential attributes of property of which the owner cannot be deprived if the organic law of both State and Nation be obeyed. [People ex rel. v. Otis, 90 N. Y. 48.]

"The act under discussion also deprives any creditor as therein mentioned of the equal protection of the laws and abridges the privileges and immunities of citizens of the United States, and denies to such creditors those rights, which Section 2 of Article 4 of the Constitution of the United States grants to them by declaring that 'the citizens of each State shall be entitled to all privileges and immunities of citizens in the several states.' A citizen of New York or of California could bring just such a suit as the petitioner has brought, and be held wholly blameless.

"The act is also obnoxious to the charge that it grants special and exclusive privileges to certain persons or association of persons, and denies the same to others in the same or similar situations. Judge COOLEY says: 'A statute would not be constitutional . . . which should select particular individuals from a class or locality, and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt . . . Every one has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments.' [Cooley, Const. Lim. (6 Ed.), 481-483.]"

Since the delivery of that opinion the Supreme Court of the United States and this court have repeatedly affirmed the principles of law expressed by Judge SHERWOOD in the following cases: International Textbook Co. v. Pigg, 217 U. S. 91, l. c. 111; Chambers v. Baltimore & Ohio R. R. Co., 207 U. S. 142, l. c. 148; International Textbook Co. v. Gillespie, 229 Mo. 397; United Shoe Machine Co. v. Ramlose, 231 Mo. 508; Roeder v. Robertson, 202 Mo. 522; British-American Portland Cement Co. v. Citizens' Gas Co., 255 Mo. l. c. 29; Gold Issue Mining & Milling Co. v. Pennsylvania Fire Insurance Co., 267 Mo. 524, l. c. 591 to 593.

In brief, Judge SHERWOOD, in the Flukes case, held that under both the State and Federal constitutions a statute which denied to a citizen of this State the right to sue his creditor on a certain class of claims, though also a resident of this State, in the courts of another State by attachment and garnishment, when a creditor of his in that State might sue him on the same class of claims in the Courts of this State, was unconstitutional, null and void, because it denied to the citizen of this State the equal protection of the laws thereof.

I am therefore of the opinion that the majority opinion in this case does not correctly construe section 7042, Revised Statutes 1909, if the Gold Issue Mining cases and those announcing a similar rule were properly decided.

I, therefore, dissent from the majority opinion, and believe that the preliminary writ should be quashed.