L. PITMAN, Respondent, v. JAMES BALL, Appellant.

**Springfield Court of Appeals, January 3, 1910.**

1. **CORPORATIONS: Suit Against Stockholder: Capital Stock: Evidence.** In a suit against one of the promoters and an original stockholder of a mining corporation to collect a debt owed by the corporation, on the grounds that the stockholder has not fully paid for his stock, it appeared from the evidence that a mining lease which had cost nothing was put in as representing the entire capital stock of $100,000. It further appeared that the mining operations under the lease were not successful and that the corporation became insolvent and dissolved within three years after its organization. The evidence was conflicting as to the real value of the mining lease. *Held*, that as the trial court saw and heard the witnesses its finding against the defendant should be sustained.

2. ————: ————: **Statute of Limitations.** Where a stockholder of a corporation is sued for a debt owed by the corporation, on the grounds that the stockholder had not fully paid for his shares in said corporation, and the debt has been kept alive against the corporation, the Statute of Limitations against the stockholder does not begin to run from the maturity of the debt against the corporation; neither does it begin to run from the time the stockholder's subscription was delivered to the corporation, but it begins to run only after the right to maintain the action against the stockholder has accrued, which in this case was the date of the insolvency and dissolution of the corporation.

3. **EVIDENCE: Value of Property.** The price that a lease sold for in 1904 throws no light on the actual value of a lease on the same land in 1899, and such evidence was properly excluded by the trial court.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*Wilbur J. Owen* and *McReynolds & Halliburton* for appellant.

(1) The right of a creditor to enforce the liability of a stockholder under section 987 accrues at the majority of the claim against the corporation from which time the Statutes of Limitations begins to run. McGinnis v. Barnes, 23 Mo. App. 413; McGinnis v. Kortkamp, 24 Mo. App. 378. (2) A judgment is a single and indivisible cause of action, and where plaintiff is not entitled to recover against defendant one part of the indebtedness included in the judgment, he can not recover the whole or any part of the judgment. Black on Judgments, sec. 735; Bank v. Nooman, 88 Mo. 372; Leonard v. Railroad, 68 Mo. App. 48; Bank v. Cramer, 78 Mo. App. 475; 1 Shinn on Attachment, sec. 135, p. 185; Harrison & Calhoun v. Mining Co., 106 Mo. App. 32. (3) The stock being issued to Ball as fully paid and he claiming all the time that his stock was fully paid the Statute of Limitations began running from the date of the delivery of the subscription to the company, 1899, against any claim on Ball for unpaid capital stock. Baltimore etc. Co. v. Barnes (Md.), 6 Har. & J. 57; Hawkins v. Donnerberg, 40 Or. 97, 66 Pac. 691; Harris v. Gateway Land Co., 128 Ala. 652, 29 So. 611; Williams v. Meyer, 41 Hun 545; Railroad v. Plumber, 37 Pa. St. 413; R. S. 1899, sec. 4273.

*H. W. Currey* and *F. L. Forlow* for respondent.

(1) Section 1330, Revised Statutes 1899, is obsolete and has no possible bearing on this case. Houser v. Thompson, 56 Mo. App. 85; Banking Co. v. Mfg. Co., 168 Mo. 634. (2) Stockholder's liability for unpaid stock subscription is a contingent liability and matures against the stockholder at the time all of the tangible assets of the corporation disappear, or at the date of the dissolution of the corporation. Garesche v. Lewis, 15 Mo. App. 565, s. c. 93 Mo. 197; Stevens v. Stevens, 172 Mo. 36; Bank v. Bank, 107 Mo. 133; Bank v. Ridge,

57 Fed. 279; Howell v. Manglesdorf, 33 Kan. 194. (3) The liability of the defendant as a stockholder is contingent, not primary; he was not the debtor of the creditors of the corporation and the Statute of Limitation runs from the date of the dissolution of the corporation or the date of the return, *nulla bona* of the execution. Donnelly v. Hodgson, 13 Mo. App. 15. (4) It is the separate and several duty of each incorporator who subscribes for the stock of a corporation in the organization thereof, to see that its capital stock is fully paid, and if property is turned over to the company for and as its capital stock he must, at his peril, see that such property is reasonably worth the specified amount of its capital. Van Cleve v. Burkley, 143 Mo. 136; Perry v. Rood, 168 Mo. 331; Hobart v. Shields, 172 Mo. 491; Rumsay v. Mfg. Co., 173 Mo. 551; Myers v. Milling Co., 192 Mo. 162; Bank v. Rockefeller, 195 Mo. 15; State v. Hogan, 163 Mo. 43; Missouri v. Paducah Iron Co., 90 Mo. App. 568.

STATEMENT.—This is an action by respondent against appellant as a stockholder of the Investors' Mining Company to recover a judgment obtained on a debt due from Investors Mining Company to respondent, alleging and claiming that appellant had subscribed for $12,500 of the stock of said company and had not paid for same. The answer was a general denial and plea of five year statute of limitations. In 1899 George Wright and defendant James Ball had secured mining leases covering forty acres of land near Webb City. July 26, 1899, Wright, Ball and three other parties formed a corporation. The articles of incorporation recited a paid up capital stock of $100,000, divided into one thousand shares of one hundred dollars each of which defendant Ball was the owner of 125 shares, which would make his part of the capital stock $12,500. As a matter of fact, no money was paid in at the time of the formation of the corporation, but

the mining leases held by Ball and Wright were the only capital of the corporation. There was an understanding that the other parties, Garner, Hammett and Watson, were to furnish money to erect mills and pay expenses until the mines should become self-supporting, but there was no agreement as to how much they were to furnish. They did furnish means to erect a mill at a cost of $13,000. The mines were operated for awhile, but in 1902 their property was disposed of and the corporation dissolved. During the time they were running they became indebted to various parties, among others, the plaintiff. The plaintiff also purchased accounts against the corporation from various other parties, brought suit thereon and obtained judgment November 21, 1902, against the Investors Mining Company for $2,188.90. Included in this judgment was an account of the Jasper County Supply Company which had been assigned to plaintiff. The itemized statement of this account shows the date of the last charge to have been June 1, 1899. Upon this account there was a credit by cash of $2.60, dated April 9, 1900. This suit was begun by plaintiff March 25, 1905. There was a trial, the court found that defendant owed more than $3,000 on his stock, and rendered judgment for plaintiff for $2,845.55. Defendant has appealed.

COX, J.—Defendant assigns as error the action of the court in excluding certain testimony. That the finding of the court is contrary to the evidence under the law, and the refusal of the court to give one instruction asked by defendant.

1. The contention of defendant is that his stock in the corporation was fully paid up. That his interest in the mining lease at the time the corporation was formed had an actual value equal to or in excess of the face of his stock, $12,500. At the trial, defendant offered to prove that in the latter part of 1903 or the early part of 1904, the parties who at that time, held

a lease upon the same land covered by the lease when this corporation was organized, had sold his lease for $60,000. On objection of plaintiff that the time was too remote from the time of the organization of this corporation and that it had no tendency to show the actual value of the property at the time the corporation was organized, this offer was rejected and objection sustained. We do not think the court committed error in excluding this testimony. A sale of a lease upon the same land four or five years after the date of the formation of this corporation would, in our judgment, throw no light upon the question as to the actual value of the lease held by Wright and Ball in 1899.

2. It is next contended by defendant that the finding of the court is against the weight of the evidence. That the cause should be reversed for that reason. The evidence shows that Wright and Ball paid nothing for the lease which they obtained and which formed the capital stock of the corporation at the time it was organized. It further shows that mining operations upon this tract after the organization of the corporation were not successful. The corporation became insolvent and dissolved in 1902. One witness testified that in his judgment the lease had no market value in 1899, while several other witnesses testified that it did have a value of from $25,000 to $40,000. The trial judge saw the witnesses was in a better position to weigh their testimony than we are, and we defer to his finding upon that question.

3. The instruction asked by defendant which was refused by the court is as follows:

"The court declares the law to be that if the defendant when he subscribed for stock in the Investors Mining Company subscribed for and took it as fully paid, then the Statute of Limitations began to run in his favor as against any claim made on him for unpaid capital stock, whether made by said corporation or a creditor of said corporation, from the date defendant's

subscription was delivered to the company, and if the court believes from the evidence that defendant's subscription to the capital stock of the Investors Mining Company was made and delivered to and received by said company as fully paid stock more than five years before the commencement of action, then this action is barred by the Statute of Limitations and the finding must be for the defendant."

This instruction declares the law to be that if parties should form a corporation alleging their capital stock to be fully paid when it is not, that no creditor of the corporation could have any right of action against the stockholders after the expiration of five years from the time of the formation of the corporation. This would seem a strange doctrine indeed and we cannot give it our sanction. Nor are we cited to any authorities which sustain this position. Appellant in his brief makes the point that the account of the Jasper County Supply Company, which was assigned to plaintiff, and which went into and formed a part of the judgment which he obtained against the corporation of which defendant was a stockholder, accrued more than five years before the commencement of the present action and for that reason the judgment against the corporation, which he now seeks to recover from this defendant, was barred by the Statute of Limitations. To sustain this position we are cited to the cases of McGinnis v. Barnes, 23 Mo. App. 413, and McGinnis v. Kortkamp, 24 Mo. App. 378.

In those cases McGinnis held the obligations of a defunct corporation and brought suits against Barnes and Kortkamp to recover his debt on the ground that they were stockholders and had not paid their capital stock in full. The action was brought more than five years after the dissolution and insolvency of the corporation but within five years after the maturity of the debt which he sought to collect. The court held that under the facts in those cases, the right of the creditor

to sue the stockholders did not accrue at the dissolution of the corporation but accrued at the maturity of his debt. Hence, the Statute of Limitations in those cases did not begin to run until the maturity of the debt. From this the appellant argues that the maturity of the debt starts the Statute of Limitations to running, and, hence, no one could be sued upon that debt after the expiration of five years.

We do not agree with this position nor do we understand that the decisions referred to sustain it. On the other hand, our conclusion is that in this case, like all others, the Statute of Limitations does not begin to run until the right to maintain an action has accrued. In this case, the plaintiff had no right of action against defendant as a stockholder for unpaid subscription to stock in the corporation until its insolvency and dissolution in 1902, and plaintiff having kept his account against the corporation alive by reducing it to judgment, and having begun the present action within five years after it accrued against the defendant, his action is not barred. The judgment is affirmed. *Nixon, P. J.,* concurs; *Gray, J.,* not sitting.