Magalena **MEYER**, Plaintiff-Respondent,

v.

**MFA MUTUAL INSURANCE COMPANY**, Defendant-Appellant.

No. 37413.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Nov. 16, 1976.

Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, John A. Schneider, Hillsboro, for defendant-appellant.

Don V. Nangle, St. Louis, for plaintiff-respondent.

NORWIN D. HOUSER, Special Judge.

Action by Magalena[1] Meyer, a named insured in a policy insuring premises located in Jefferson County against the hazard of fire, against MFA Mutual Insurance Company, to recover on the policy. Tried to the court without a jury judgment was rendered for Magalena and against MFA for $15,000, the policy limit, $1,500 for vexatious refusal to pay, $2,500 attorney's fees and costs. MFA has appealed.

The insured premises were totally destroyed by fire on February 6, 1971 during the term of the policy, which was issued in the names of Vernon Meyer and Magalena Meyer. The insureds were husband and wife when the policy issued but divorced when the fire occurred. At both these times the premises were subject to a note and deed of trust in favor of Federal Housing Administration. The policy contained a loss-payable-to-mortgagee clause. Vernon

---

1. Also referred to in the transcript as Magdalen E. Meyer.

Meyer filed for bankruptcy on October 26, 1970, listing his obligation to FHA as one of his liabilities. He was discharged in bankruptcy on March 1, 1971. The FHA loan was current on the date of the fire but later became delinquent. FHA made no claim under the insurance policy and made no effort to collect the note. Instead it foreclosed on the deed of trust. At the foreclosure sale on November 11, 1972 FHA bid in the amount of principal and interest due on the debt ($16,150), leaving no deficiency.

MFA's first point: "The trial court erred in overruling defendant's motion to dismiss, in granting judgment for plaintiff and in overruling defendant's motion for new trial because plaintiff had no insurable interest in the property since plaintiff did not own it and plaintiff had no standing or right to bring suit under the circumstances."

" 'In general a person has an insurable interest in the subject matter insured where he has such a relation or connection with, or concern in, such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against.' " *American Central Insurance Co. v. Kirby,* 294 S.W.2d 556, 561 (Mo.App.1956); *Sander v. Mid-Continent Insurance Co.,* 514 S.W.2d 634, 637 (Mo.App. 1974); *Wrausmann v. Kansas City Fire and Marine Ins. Co.,* 477 S.W.2d 741, 742 (Mo. App.1972).

■ MFA asserts that on the date of the fire Magalena had no insurable interest in the property and suffered no loss as a result of the fire because she had previously disposed of the property; that she conveyed her interest to Nicholas Watz and wife by warranty deed dated December 5, 1969, executed by Vernon and Magalena Meyer before Stanley A. Veronecki, a notary public of the City of St. Louis, and filed for record November 23, 1970. The trial court declared the deed null and void. On this review, under the case of *West v. Witschner,* 482 S.W.2d 733, 737[4] (Mo.1972), we reach the same result. There is convincing evidence of record to support a finding, and

we find, that on or about December 5, 1969 Vernon Meyer, then being indebted to Magalena's brother Nicholas Watz in the sum of $1,500, and having applied to Watz for additional funds, with which to pay the upcoming instalment of $1,065 due FHA on January 1, procured the signature of Magalena Meyer on a blank general warranty deed form; that he carried the blank form bearing her signature, and a separate paper on which the legal description of the property was written, to City Hall, where Watz worked, and together the two had the legal description written into the deed form and the other blanks filled in, whereupon it was signed by Vernon Meyer before a notary public who acknowledged the execution of the deed by both Vernon Meyer and Magalena Meyer, notwithstanding the latter was not present and did not acknowledge the instrument, and neither knew of nor authorized the act of the notary. There was ample evidence to support the trial court's finding that Magalena Meyer lacked mental capability, was unable to grasp basic business essentials, had no intention of conveying her interest in the property, was not aware that she had signed a general warranty deed conveying her interest, and that up to the time of the fire she believed, and thereafter continued to believe, that she had an ownership interest in the property. On this review we further find, as did the trial court, that when Vernon Meyer approached Watz for further financial help (at a time when Watz knew the marriage was deteriorating) Watz insisted upon Vernon Meyer deeding his interest in the property to Watz as some kind of an assurance or pledge in an effort to make Vernon Meyer recognize his responsibilities to his family, and for the protection of Watz' sister Magalena; that the mother, sister, and the two brothers of Magalena took a continuing interest in her welfare, "chipping in" from time to time over the years to the extent of hundreds of dollars, contributing to make payments due on the mortgage as well as to provide basic needs of food, etc. for Magalena and her children; that Watz had no intention of profiting personally from the conveyance; that Watz placed the deed,

which he did not record and had no intention of recording, in a folder with other papers and bills concerning the property; that later Watz moved out of the state; that before leaving Missouri he turned over to his brother Joseph Watz all of the papers relating to this property, including the unrecorded deed, together with the responsibility of looking after their sister Magalena; that the deed was filed for record by Joseph Watz, who was advised to do so by the FHA representative, to whom Joseph imparted the information that the deed was in existence.

The invalidity of the deed undercuts MFA's argument that payment of the policy proceeds to FHA would not have protected Magalena's equity of redemption because she had conveyed the property before the loss occurred. Magalena had an insurable interest in the property not only by virtue of her title interest but also by reason of the fact that she was obligated to FHA on the note and deed of trust she executed.

But, says MFA, the policy was voided in its entirety as against everyone, including the insured, Magalena, because of the violation of a policy provision by mortgagee FHA requiring the mortgagee to notify the insurer of any change in ownership which shall come to the knowledge of the mortgagee, "otherwise this policy shall be null and void." While FHA's representative, who had been informed of the existence of the deed, did not report the apparent change of ownership to MFA, no forfeiture ensued for the reason that in fact and in law there was no change of ownership. There was a warranty deed of record which pretended or purported to indicate a change of ownership but as we have seen that deed was inoperative, null and void. In the case of policy provisions against alienation or change of interest or title a change in the evidence of title which is merely nominal or which is not of such a nature as to diminish the motives of insured to guard the property from loss, and where the real ownership remains the same, does not violate the policy. 43 Am.Jur.2d Insurance §§ 856, 857.

On analogy, a forfeiture does not occur for failure of a mortgagee to notify the insurer of a change of ownership where there is a void conveyance.

Next, MFA confidently asserts that Magalena is not the real party in interest and has no right or standing to maintain this action; that the real party in interest is the mortgagee, citing *Klamen v. American Automobile Ins. Co.,* 492 S.W.2d 390 (Mo. App.1973), and quoting from *Hartford Fire Ins. Co. v. Bleedorn,* 235 Mo.App. 286, 132 S.W.2d 1066, 1070–1071 (1939), as follows: "* * * [W]here the insurance policy provides that the loss shall be paid to the mortgagee as his interest may appear, the right to sue is in the mortgagee alone upon the theory that the clause in the insurance policy gives him the same rights as if the policy had been absolutely assigned to him. *Ridge v. Home Ins. Co.,* 64 Mo.App. 108, 110."

We conclude that Magalena is the real party in interest. She never parted with her title; she remained liable on the note to FHA; she was one of the insureds. Where the improvements attached to mortgaged real estate are insured by a policy of insurance issued to the mortgagor with a loss-payable-to-mortgagee clause and mortgagor defaults, the mortgagee may sue on the note, foreclose the mortgage, or sue on the insurance policy as sole plaintiff, *Klamen v. American Automobile Ins. Co.,* supra; *Hartford Fire Ins. Co. v. Bleedorn,* supra; *Gosnell v. Camden Fire Ins. Ass'n of Camden, N.J.,* 109 S.W.2d 59, 71[25] (Mo. App.1937); *Walton v. Phoenix Ins. Co.,* 162 Mo.App. 316, 141 S.W. 1138 (1911), in which case any recovery over and above the debt will be held in trust for the mortgagor, or the mortgagee may join with mortgagor as coplaintiff, *Florea v. Iowa State Ins. Co.,* 225 Mo.App. 49, 32 S.W.2d 111 (1930), or the mortgagor-insured may bring suit in his own name. *Payne v. Bankers' & Shippers' Ins. Co. of N.Y.,* 229 Mo.App. 901, 77 S.W.2d 183 (1934); *Branigan v. Jefferson Mut. Fire Ins. Co.,* 102 Mo.App. 70, 76 S.W. 643 (1903); *Anthony v. German Am. Ins. Co.,* 48 Mo. App. 65 (1892). In *Florea* the court said, 32

S.W.2d l.c. 114: "Conceding that the extent of the debt owing to the mortgagees may have foreclosed to Florea the right to share in the proceeds, he [the mortgagor] was yet the owner of the bare legal title to the cause of action, and as such was a real party in interest under section 1155, Rev.St. 1919 [now § 507.010 RSMo 1969], and entitled to maintain an action thereon, even though the beneficial ownership was vested in another. *Swift & Co. v. Wabash R. Co.,* 149 Mo.App. 526, 131 S.W. 124; *Keeley v. Indemnity Co. of America,* 222 Mo.App. 439, 7 S.W.2d 434. It would seem under the circumstances that either Florea [the mortgagor] or Fahey Bros. [the mortgagees] might have brought the suit alone, Florea as the trustee of an express trust, and Fahey Bros. as the parties for whose benefit the contract was made, but nevertheless, under the terms of the loss-payable clause, it was proper for them to be joined as plaintiffs, since, no matter how they sued, a recovery by either or both would bar any further action on the policy." In *Payne* the court said, 77 S.W.2d l.c. 187: "The owners were the ones primarily insured and the mortgagee secondarily. In so far as the insurance is in favor of the mortgagee, the owner is, under section 699, [trustee of an express trust statute] trustee for the mortgagee's benefit. * * * The entire insurance is for the benefit of the owner; for any payment by the company to the mortgagee is for the owner's benefit to the extent that the debt is discharged. The company engages to pay loss to the owners, and to the mortgagee such part of the insurance payable to the latter, but does not promise the mortgagee to pay the owners such part as may be due to them, so that the owners (plaintiffs) are parties to the entire contract while the mortgagee is a party to only a portion thereof. Again, the loss insured against falls on the owners to a certainty, but only to the mortgagee in the event of the insolvency of the owners, and then only to the value of his security."

FHA elected to recover its debt not by enforcing the insurance policy, which it had a right to do, but by foreclosing the deed of trust. The policy was not only for the protection of the mortgagee, but also for the benefit of the owners of the property for the protection of whatever equity of redemption they might have in the property. As it turned out the amount of the debt and the face amount of the policy were equivalents. The insurer issued the policy and accepted the premium on an agreement to pay $15,000 on the hazard of the occurrence of a complete loss by fire. The event insured against having occurred, the insurer is not to be excused from meeting the obligation of its contract simply because the mortgagee did not insist upon enforcement of the loss-payable clause, but instead resorted to the land to secure satisfaction of the debt. Insurer's engagement was to pay the mortgagee "Loss or damage, *if any,* under this policy, * * *" (our emphasis), and if the mortgagee suffered no loss (by reason of satisfaction of the mortgage debt by foreclosure) insurer's engagement was to pay the proceeds of the policy to the insureds.

■ Next, MFA questions Magalena's entitlement to more than half the proceeds of the policy, arguing that since the named insureds were Magalena and her husband Vernon, and since they were later divorced, Vernon was entitled to half the proceeds on the date of the loss (at which time he had not yet been discharged in bankruptcy). The defense that the divorce and bankruptcy disentitled Magalena to recover more than half the policy proceeds is an affirmative defense which was not raised in the trial court. The trial judge had no opportunity to consider this defense. The point has not been preserved for appellate review, and comes too late for consideration in this Court.

■ MFA further contends that Magalena's own evidence shows that her damage and loss was substantially less than the face amount of the policy, $15,000. MFA figures the loss at no more than $9,500, based on a valuation of the 20-acre tract at $14,000 and the fact that shortly before the fire a contract for the sale of the entire property (land and house) for $23,500 was signed.

MFA says an even more realistic value of the house would be around $8,000, based on the price FHA paid for the land sans house at foreclosure ($16,150) and the amount for which FHA sold the land ($16,500).

The fire totally destroyed the house, which cost $15,000. The trial court found, and we find, that there was no depreciation between the date the policy issued and the date of the fire. MFA issued a policy in the amount of $15,000. Section 379.140, RSMo 1969 provides: "In all suits brought upon policies of insurance against loss or damage by fire * * * the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property; and in case of total loss of the property insured, the measure of damage shall be the amount for which the same was insured, less whatever depreciation in value, below the amount for which the property is insured, the property may have sustained between the time of issuing the policy and the time of the loss, and the burden of proving such depreciation shall be upon the defendant * * *."

Under § 379.140 the measure of damages is $15,000. Under the evidence there was no depreciation. Accordingly, there was no error in the $15,000 award.

■ MFA's final point, that the court erred in awarding a sum for vexatious refusal to pay is sustained. The test, under Laws 1975, p. 225, H.B. No. 93, § 1, is whether the refusal to pay the loss is "without reasonable cause or excuse." The reason for denying liability was lack of insurable interest. There was reasonable cause to believe that Magalena lacked insurable interest in the property, by reason of the fact that MFA had notice that on the public records of Jefferson County there was a recorded warranty deed showing that some 14 months prior to the fire Magalena had joined with her husband in conveying the insured premises to Nicholas and Virginia Watz by an apparently valid deed with a covenant to warrant and defend the title against all persons whomsoever, excepting for taxes, and the further fact that the last premium on the policy before the fire was paid by one Joe Watz, and not by the named insureds (which might be taken as an indication that Magalena no longer had any interest in the property). A refusal to pay when payment is due is not vexatious if founded on what at the time appeared to be the facts. The insurer had a right, without penalty, to litigate an open question of law or disputed facts for which there was reasonable cause for belief. *Cohen v. Metropolitan Life Ins. Co.*, 444 S.W.2d 498 (Mo.App.1969).

Implicit in this finding is the denial of Magalena's request for an award of damages for frivolous appeal under Rule 84.19.

Judgment affirmed for $15,000 damages on the policy; reversed as to the award of $1,500 for vexatious refusal to pay and the consequential award of $2,500 attorney's fee.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.