Chalmer R. BERRY and Wanda S. Berry, Plaintiffs-Respondents,

v.

FEDERAL KEMPER INSURANCE COMPANY, Defendant-Appellant.

No. 12055.

Missouri Court of Appeals,
Southern District,
Division Three.

Sept. 21, 1981.

Briney, Welborn & Spain, P. C., Bloomfield, for plaintiffs-respondents.

Harold D. Jones, Bock & Jones, New Madrid, for defendant-appellant.

PREWITT, Judge.

Plaintiffs sought recovery on an insurance policy for fire damage to a dwelling house and contents. A jury verdict was rendered in their favor for $60,000 for damage to the house and contents, $12,960 interest and $7,500 for attorney fees because of vexatious delay. Judgment was entered in accordance with the verdict. Defendant presents eight points for review. We find point seven in defendant's favor but also consider the remaining points as they could affect the manner of our reversal or arise again on retrial.

Defendant's first point contends that the trial court erred in overruling its motion to quash summons and service "for the reason that the Circuit Court of Scott County was an improper venue in this action on a fire policy because the building in which the fire occurred was in Dunklin County and the Plaintiffs were and still are residents of Dunklin County." Plaintiffs' petition alleged and defendant admitted that it is a foreign insurance corporation authorized to do business in Missouri with an office or agent for the transaction of its usual and customary business in Scott County, Missouri. Section 508.040, RSMo 1978, provides that suits against a corporation can be commenced "in any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business."

Defendant states that it is unfair to require an insurer to try a case in any county where it has an agent or office, including one hundreds of miles from where the loss occurred or from the residence of the plaintiffs. It does acknowledge, however, that a "literal interpretation" of this section would result in plaintiffs being able to sue it in Scott County. Defendant's argument is a matter for the legislature's determination, not the courts. A foreign insurance company under this section can be sued either in the county where the cause of action accrued or in any county where it has an agent for the transaction of its usual and customary business. *State ex rel. Standard Fire Ins. Co. of Hartford, Conn. v. Gantt*, 274 Mo. 490, 203 S.W. 964, 968 (Mo. banc 1918). Point one is denied.

■ Defendant's second and third points are premised on the contention that plaintiffs did not have an insurable interest in the dwelling house. According to the last recorded deed describing the property, title to it was in C. R. Berry Investment Company, Inc. Plaintiffs held an unrecorded deed to the premises from that corporation. They presented evidence that it had been signed, acknowledged and delivered before they applied for the insurance and that they owned the property under this deed at the time of the loss. Defendant's second point claims that the unrecorded deed was invalid and counsel's motion for a directed verdict should have been granted because plaintiffs did not have an insurable interest in the premises. Part A of point three contends that the trial court should have sustained defendant's motion for a directed verdict because plaintiffs did not have "title to nor an insurable interest in the dwelling". Part B of point three claims that the court erred in giving a verdict directing instruction which did not require the jury to find that plaintiffs had either title to the premises or an insurable interest and erred in refusing to give an instruction tendered by defendants which required a finding of an insurable interest in plaintiffs.

If the unrecorded deed was valid, then plaintiffs were the owners of the dwelling and had an insurable interest. If it was not valid, then title was in the corporation. It was undisputed that plaintiff Chalmer R. Berry owned stock of that corporation. Evidence offered by defendant indicated he owned all of the stock. As a shareholder he had an insurable interest in the corporation's property. Annot., Insurable interest of stockholder in corporation's property, 39 A.L.R.2d 723, 724 (1955). Under either circumstance Chalmer R. Berry had an insurable interest. No contention is made that a directed verdict should have been rendered against Wanda S. Berry alone. If defendant had questioned whether Mrs. Berry had an insurable interest, that should have been submitted, because the jury may not have believed plaintiffs' evidence as to when the unrecorded deed was made. Whether Mr. Berry alone or he and his wife recovered apparently made no difference to defendant. There was an insurable interest shown by at least one of the plaintiffs. Points two and three are denied.

■ Defendant's fourth point contends that the court erred in admitting certain photographs of the interior of the building made almost four years after the fire occurred. Defendant claims they did not fairly and accurately represent the appearance of the house as it was immediately after the fire because the dwelling had been unoccupied and subject to other damage and deterioration. Defendant contends that these photographs show substantially more damage than photographs it had taken three days after the fire. Plaintiff Chalmer R. Berry testified that the photographs fairly and accurately reflected the condition of the house immediately after the fire except for certain changes which he explained. Photographs may be admissible in evidence when taken long after an event and after changes have occurred in the object taken, if such changes are explained. *Brock v. Gulf, Mobile and Ohio Railroad Company*, 270 S.W.2d 827, 833 (Mo.1954). Even substantial changes will not necessarily exclude a photograph where the changes can be and are explained so that the photograph, as explained, will give a correct understanding of the conditions. *Phillips v. Prugh*, 255 S.W.2d 84, 87 (Mo.App.1953). The photographs were sufficiently identified and the changes explained. Point four is denied.

■ Defendant's fifth point contends the trial court erred in permitting plaintiff Chalmer R. Berry to testify to the dimensions of the dwelling and its room sizes contained on a drawing prepared from his memory 39 months after the fire. Defendant also claims the court erred in permitting a contractor to testify regarding a repair estimate based upon information he received from Berry as to the dimensions of the rooms and the quality of materials in

the house prior to the fire. Berry's dimensions varied with measurements made by a witness for defendant. Whether Berry was truthful was for the jury to decide. Point five is denied.

■ Point six contends that the court erred in allowing plaintiff Wanda S. Berry to testify as to the values of specific items of furniture allegedly destroyed in the fire because plaintiff Chalmer R. Berry testified that two days after the fire most of the furniture was missing from the house. Defendant contends there was no evidence that the furniture was in the house and was damaged by the fire. The fire occurred on September 26, 1976, while plaintiffs were living in Mississippi. They had last been at the premises on Labor Day of that year. The furniture valued had been in the house on Labor Day and plaintiffs said they had not taken it out or authorized anyone to remove it. The fire department captain who went to the house to extinguish the fire said there was no indication before the firemen entered that anyone had broken into the house. We think that whether the furniture was destroyed in the fire was a jury question. See *Duckworth v. United States Fidelity & Guaranty Company*, 452 S.W.2d 280, 286–287 (Mo.App.1970). Point six is denied.

Defendant's seventh point contends the trial court erred in giving the damage instruction submitted by plaintiffs as that instruction was "a tort measure of damages" and does not contain "any of the policy contract language for recovery of loss" and there was no substantial evidence to support the before and after measure of damages stated in the instruction for either the house or contents.

■ The argument portion of defendant's brief only develops its contention regarding lack of evidence of before and after values of the dwelling and contents. Thus we only consider those contentions. Subpoints lacking any argument or citation of authority are deemed abandoned and pre-

serve nothing for appellate review. *State v. Boley*, 565 S.W.2d 828, 831 (Mo.App.1978). Issues submitted in an instruction to the jury must be supported by evidence from which the jury could find such issue. *Walker v. Woolbright Motors, Inc.*, 591 S.W.2d 289, 291 (Mo.App.1979). There it was held that an instruction for the jury to determine the difference in value of a vehicle was erroneous as there was no evidence of value for the jury to consider.

■ The evidence as to contents was sufficient. Mrs. Berry detailed the value of items allegedly destroyed in the fire. We now discuss evidence of the before and after value of the dwelling.

■ Section 379.140, RSMo 1969, a "valued policy" statute, arbitrarily fixes the value of property insured for fire loss as the amount for which the property was insured less depreciation. *MFA Mutual Insurance Company v. Southwest Baptist College, Inc.*, 381 S.W.2d 797, 803 (Mo.1964); *Duckworth v. United States Fidelity & Guaranty Company, supra*, 452 S.W.2d at 285; *Blaetz v. National Fire Ins. Co. of Hartford, Conn.*, 293 S.W. 504, 506 (Mo.App.1927); *Farber v. Boston Ins. Co.*, 221 Mo.App. 691, 288 S.W. 977, 978 (1926). See also *Huth v. General Accident & Life Assurance Corporation Ltd.*, 536 S.W.2d 177, 180 (Mo.App.1976). Under this statute the burden of proving depreciation is upon defendant and there was no such proof here. Therefore, the minimum value of the dwelling before the loss was the $50,000 set forth in the policy.

The fire occurred September 26, 1976. A witness testified that on July 30, 1980, the house "and the property" would be worth $10,000. There was no evidence as to what it was worth immediately after the fire.

■ Plaintiffs contend that as Mr. Berry stated that the house in 1980 was in the same condition as it was in 1976, the evidence of its value in July of 1980 is evidence of its value immediately after the fire. We do not agree. Time might change the value

even if the damage stayed substantially the same. Factors in the real estate market may have decreased or increased its value. While it could have increased in value in that time, we cannot take judicial notice that it did not decrease during that period. Changes or trends in the market value of real estate are not subjects which permit a reliable generalization or judicial knowledge without evidentiary proof. *Kirst v. Clarkson Construction Company*, 395 S.W.2d 487, 498 (Mo.App.1965). See also *Warmack v. Crawford*, 239 Mo.App. 709, 195 S.W.2d 919, 923 (1946).

 To be relevant, evidence on the value of real estate must relate to the time to which the value is to be determined or to a time so near that it may reasonably throw light on the value at such time. *Shechter v. Brewer*, 344 S.W.2d 784, 791 (Mo.App.1961); 31A C.J.S. Evidence § 182(6), p. 476. A sale of stock two years after the settlement of an administration is too remote to show the market value of the shares at the time they were distributed to the heirs. *Moffit v. Hereford*, 132 Mo. 513, 34 S.W. 252, 253 (1896). The value of a mining lease is not shown by evidence of what a subsequent lease on the same tract sold for four or five years later. *Pitman v. Ball*, 140 Mo.App. 389, 124 S.W. 1082, 1083 (1910).

There was no evidence that the value of the dwelling remained the same from September 26, 1976, to July 30, 1980. We do not decide if the evidence on the property's value on July 30, 1980 should have been admitted as bearing on the value at the time in question but do hold that this evidence alone was not sufficient to establish the value immediately after the fire.

 There was also evidence of the cost of repair to the dwelling. Such evidence is admissible as tending to support plaintiffs' claim of damage, but by itself is not sufficient to establish that plaintiff suffered such amount of damage. *Langdon v. Koch*, 393 S.W.2d 66, 69 (Mo.App.1965). Point seven is ruled in favor of defendant.

In its last point defendant contends that the trial court erred in submitting to the jury whether plaintiffs were entitled to attorney fees for vexatious delay. § 375.420, RSMo 1969. The verdict gave plaintiffs $7,500 for attorney fees but did not assess any additional penalty. Defendant contends that it could not be vexatious since record title was not in plaintiffs, and plaintiffs' proof of loss claimed an amount in excess of the damages determined by the jury and considerably more than defendant's repair estimate. Our previous analysis of the only liability question defendant raised, whether there was an insurable interest, convinces us that shortly after the time of the loss, with slight investigation or inquiry, the defendant could have determined that it was liable and that plaintiffs or plaintiff Chalmer K. Berry were entitled to some recovery. The only legitimate dispute could be the amount of damage. The evidence indicated that defendant never made an offer of settlement. On February 9, 1980 the defendant tendered "the unearned premium on the policy" to plaintiffs.

 In order to recover it is not necessary to show affirmatively that the delay was vexatious; it is only required that the evidence and circumstances be sufficient to justify the conclusion that refusing to pay was vexatious. *Handly v. Lyons*, 475 S.W.2d 451, 461 (Mo.App.1971). It has been stated that generally there can be no vexatious refusal where the plaintiff seeks a recovery for more than which he is entitled. *Irelan v. Standard Mutual Association of Cassville*, 379 S.W.2d 815, 821 (Mo.App. 1964). But if both the amount due and the liability under the policy are disputed, then if plaintiffs recover less than sued for, that does not preclude vexatious recovery. *Id.; Wood v. General Ins. Co. of America*, 229 Mo.App. 296, 77 S.W.2d 167, 169 (1934); *Glover v. Liverpool & London & Globe Ins. Co.*, 193 Mo.App. 489, 186 S.W. 583, 584 (1916).

 The existence of a litigable issue does not preclude a vexatious penalty

where there is evidence the insurer's attitude was vexatious and recalcitrant. *Still v. Travelers Indemnity Company,* 374 S.W.2d 95, 103 (Mo.1963); *Lemay Ferry Bank v. New Amsterdam Casualty Co.,* 347 Mo. 793, 149 S.W.2d 328, 331 (1941). We believe that there was such evidence. Defendant did not offer to pay the amount of damages that it said occurred. In addition, failure to promptly return the insurance premiums, where the defense is lack of insurable interest, is evidence of bad faith. *Still v. Travelers Indemnity Company,* supra, 374 S.W.2d at 103; *Lux v. Milwaukee Mechanics' Ins. Co.,* 30 S.W.2d 1090, 1093 (Mo.App.1930). Apparently no reason for denying liability was given, other than lack of an insurable interest. The defense of lack of an insurable interest was tenuous at best and may not have been the true reason for the denial. The denial of liability without stating any ground for denial is sufficient to warrant the submission of vexatious damages, *Hounihan v. Farm Bureau Mutual Ins. Co. of Mo.,* 523 S.W.2d 173, 175 (Mo.App.1975).

Defendant cites *Meyer v. MFA Mutual Insurance Company,* 543 S.W.2d 822, 827 (Mo.App.1976), claiming it had the right to rely on the deeds of record as to the ownership of the house. Very little investigation would have been necessary to have established that there was in fact an insurable interest here, and thus we do not believe *Meyer* aids defendant. This point is denied.

The only error we find pertains to damages. Where liability is fairly tried but error is found on the issue of damages, the ends of justice require that the finding of liability be sustained and the case be remanded for trial on the issue of damages only. *Langdon v. Koch,* supra, 393 S.W.2d at 71. The error pertained only to the value of the dwelling, but as the verdict did not separate the damage to the dwelling from damage to its contents, the total recovery under the policy must be reconsidered. That is the only issue to be retried. Vexatious penalty or attorney fees should not be resubmitted as that has been fairly determined by the jury and any additional attorney fees would not be the fault of defendant. After the amount of the recovery under the policy, with interest, is determined, the $7,500 for attorney fees should be added and entered in the final judgment.

The judgment is reversed and the cause remanded for retrial on the issue of the amount of plaintiffs' recovery under defendant's insurance policy.

BILLINGS, P. J., and HOGAN and TITUS, JJ., concur.