Arthur WHITMAN and Darlene Whitman, Plaintiffs-Respondents,

v.

CONSOLIDATED ALUMINUM CORPORATION, Defendant-Appellant.

No. 12381.

Missouri Court of Appeals, Southern District, Division One.

July 23, 1982.

Motion for Rehearing Overruled and to Transfer to Supreme Court Denied Aug. 13, 1982.

Application to Transfer Denied Sept. 13, 1982.

---

Donald E. Woody, Monte P. Clithero, Taylor, Stafford & Woody, Springfield, for plaintiffs-respondents.

Lynn Myers, Daniel, Clampett, Rittershouse, Dalton & Powell, Springfield, for defendant-appellant.

PREWITT, Judge.

Plaintiffs alleged that a ladder manufactured by defendant "buckled, broke and collapsed", causing plaintiff Arthur Whitman (Arthur) to fall from it and suffer permanent injuries. Plaintiff Darlene Whitman (Darlene) is Arthur's wife. A label on it said the ladder was "200 pound duty rated". Arthur testified that he relied on those words on the label in purchasing the ladder from a Wal-Mart store. He testified that there was less than 200 pounds on it when it collapsed. He is a sign painter and was painting a sign above the entrance to a grocery store when the fall occurred.

Plaintiffs offered expert testimony that the ladder was of "too light a design"; that there was "non-uniformity of properties of hardness and the tensile strength"; and that the "section which failed is softer". The expert testified that failure of the ladder was due to "insufficient strength and rigidity." Plaintiffs submitted their claims to the jury upon express warranty (MAI 3d ed. 25.07) and received verdicts awarding Arthur $42,000 and Darlene $7,200. Judgment was entered in accordance with the verdict. Defendant appeals.

■ In its first point defendant contends that plaintiff could not recover for the breach of an express warranty because there was no privity between plaintiffs and defendant. It contends that privity is an essential element in an action upon an express warranty. Defendant relies in part upon § 400.2–318, RSMo 1978. We do not believe that it applies here. Our view of it is consistent with U.C.C. Comment 3, stated after it in V.A.M.S. It states "the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." We agree with statements in earlier decisions that privity of contract is not required to recover for injuries caused by breach of an express warranty. *Worley v. Proctor & Gamble Mfg. Co.*, 241 Mo.App. 1114, 1121–1122, 253 S.W.2d 532, 537 (1952). See also *Westerhold v. Carroll*, 419 S.W.2d 73, 77 (Mo.1967). The label was obviously directed toward prospective purchasers and users of the ladder and defendant should have known that they might rely on it. If Arthur relied on it, and it was incorrect and caused his injury, defendant should be liable. Point one is denied.

Defendant asserts in its second point that the trial court erred in admitting into evidence a motion picture film because the film shows Arthur working in a different manner than he testified on deposition and shows him shaking the ladder while on it. Arthur testified that when the film was taken the bottom of the ladder was being held. The ladder he was on was not being held at the time that he fell. A different but similar ladder was used in the film. Defendant contends that because he was not working in the same manner and because the ladder was being held the exhibit did not show an accurate demonstration.

■ The ruling of a trial judge on the question of the admissibility of a motion picture must be accorded great weight and will not be disturbed on appeal unless shown to be an abuse of discretion. *Cryts v. Ford Motor Company*, 571 S.W.2d 683, 691 (Mo.App.1978). Considerable discretion must be given the trial court in determining whether the picture will tend to aid or confuse the jury. Id.

Arthur testified at trial that the motion picture showed both him and the ladder in essentially the same position as they were in just before he fell. The transcript states that he testified that he "got a little wider

[sic] than what I'd ever been on top of a ladder" because there were people standing below in case anything happened.

The introduction of the picture was not prevented because his deposition indicated that Arthur was working in a different position. An inconsistent pretrial statement does not destroy trial testimony as proof. *Wilson v. Missouri-Kansas-Texas Railroad Company*, 595 S.W.2d 41, 44 (Mo. App.1980). Nor do we think that the admitted differences from the actual incident and the film demonstration prevented the motion picture from being admitted. Changes do not necessarily exclude photographs when the changes are explained so that the photograph, as explained, will give an understanding of the conditions that existed at the time in question. *Berry v. Federal Kemper Insurance Company*, 621 S.W.2d 948, 951 (Mo.App.1981). We think the motion picture may have been of aid to the jury in understanding how the incident in question occurred and with the explanations given, we do not think it would have misled them. We cannot say that the trial court abused its discretion in admitting the motion picture. Point two is denied.

In its third point, defendant contends the trial court erred in allowing Arthur to testify that he did not land on the ladder when he fell as this contradicts his petition. The petition alleged that while Arthur was "positioned upon said ladder it buckled, broke and collapsed to the ground, thereby causing Plaintiff to come into violent contact with said ladder and/or the ground". Defendant contends that Arthur's testimony that he landed on the ground was inconsistent with the petition and he was bound by the statements there. Defendant also contends that the court erred in refusing to allow it to read the above-quoted portion of plaintiffs' petition. We do not view this allegation as inconsistent with Arthur's testimony. The petition obviously alleges that he struck the ground and ladder, or struck the ladder or the ground. These alternate statements were not inconsistent with his testimony and reading that portion of the petition would

have added nothing for the jury's consideration. This point has no merit.

In its fourth point defendant contends that the trial court erred in allowing plaintiffs to read from the deposition of defendant's employee, Edward Cooke. Mr. Cooke was "primarily responsible" for the engineering and design of ladders manufactured by defendant. The portions of his deposition read stated that he was a "manufacturing engineer", a title he bestowed on himself; that he had not taken or passed any test by any state engineering licensing authority nor had his qualifications or knowledge of mechanical engineering or metallurgy ever been formally tested or examined by anyone; that he had not attended college; and that defendant stopped manufacturing aluminum ladders on October 31, 1978.

Plaintiffs had contended at trial that Cooke's lack of formal education and the company's eight year experience in making ladders were relevant for the jury's consideration. There was never any indication or inference that defendant quit manufacturing ladders because of defects or alleged defects in them. The deposition showed that defendant had discontinued manufacturing all aluminum products and Cooke explained in his testimony that this occurred because defendant determined that it was more profitable to sell the aluminum in bulk than to manufacture products from it. Even if, at the time the deposition evidence was offered, the evidence was not relevant, it became relevant when Cooke testified for defendant. His education and experience were relevant for the jury in considering his testimony. The period of time that defendant manufactured the ladders related to Cooke's experience. There was no indication that he testified because portions of his deposition had been introduced. Defendant suffered no prejudice due to the time of the introduction of the evidence complained of in this point. The point is denied.

Defendant's fifth and sixth points assert that the awards of $42,000 to Arthur

and $7,200 to Darlene were excessive. Arthur was 27 at the time of the fall. He suffered a nondisplaced fracture of the right heelbone. He was placed in a cast for four to five weeks. He stayed at home for five and one-half weeks. He has "a permanent disability with respect to the condition of his feet". He has difficulty in walking and standing on a ladder. Due to his injuries, Arthur has suffered from pain in the past and apparently will have pain in the future. His attitude and mood around Darlene and their children has changed. He is not in as good a mood as he was before the fall, particularly after working. When he comes home from work he just wants to sit. Before, he used to jog with Darlene or play with the children. He frequently wakes up with cramps in his feet at night. He had medical expenses and loss of income. We believe that neither amount awarded was excessive. Points five and six are denied.

Defendant's seventh and final point states that the trial court erred in allowing an expert witness to give his opinion based on a hypothetical question because the court refused to require the question to include that the ladder was lying flat on the ground just before Arthur landed. Defendant is contending that damage to the ladder may have been caused when Arthur struck it and not as a result of its failure to support Arthur. Later the expert was asked if Arthur's body could have caused the buckling that occurred in the ladder if he had landed on it while it was lying on the ground. The expert said that this damage could not have happened that way. Thus, even if we assume that the part which defendant contends should have been included in the question was erroneously omitted, it would not have changed the expert's opinion and defendant could not have been prejudiced by omitting it. Point seven is denied.

The judgment is affirmed.

GREENE, C. J., FLANIGAN, P. J., and TITUS, J., concur.