**RUST & MARTIN, INC.,**
**Plaintiff-Appellant,**

v.

**Roland ASHBY and Carolyn M. Ashby,**
**Defendants-Respondents.**

**No. 13216.**

Missouri Court of Appeals,
Southern District,
Division Three.

April 26, 1984.

J. Michael Payne, Limbaugh, Limbaugh, Russell & Syler, Cape Girardeau, for plaintiff-appellant.

W.H. Winchester, III, Norton & Winchester, Sikeston, for defendants-respondents.

PREWITT, Judge.

The principal issue tried was whether plaintiff, who sought recovery of the balance of a contract price from defendants, breached that contract by improperly installing a herringbone pattern Permagrain floor. A jury verdict denied plaintiff any recovery and awarded defendants $3,500 on their counterclaim for breach of contract due to defective performance. Judgment was entered in accordance with the verdict. Plaintiff appeals.

Defendants entered into an agreement with plaintiff for the floor's installation as a part of the remodeling they were doing to their home. The floor was installed in the kitchen, sunroom, bath and adjacent hallways. The subfloor was installed when plaintiff's installer commenced working. The floor was installed by putting glue on the subfloor and then placing the boards which comprised the floor on the subfloor, with the tongues of the boards inserted into the groove of the boards next to them. Defendants presented evidence that the floor was not properly installed and that to install it properly it would be necessary to tear out the floor and subfloor and reconstruct them. No evidence was offered on the value of the house following the installation of the floor and its value had the floor been properly installed.

In plaintiff's first point, it contends that evidence of the costs of tearing out the existing floor and subfloor and replacing it should not have been allowed as defendants' proper measure of damages is the difference in value of defendants' home as the floor was completed and the value of the home as it would have been if the flooring had been properly installed. Plaintiff's second point asserts that the trial court erred in submitting the damage instructions and verdict form to the jury on the counterclaim because there was no evidence to support the proper measure of damages.[1] As presented these points stand or fall together depending upon whether the defendants' evidence on damages was proper and sufficient to support the verdict. Therefore, we discuss them together.

Relying primarily on *Forsythe v. Starnes*, 554 S.W.2d 100, 109–110 (Mo.App. 1977), plaintiff contends the owner of a building is not allowed to recover from a contractor for the cost of reconstruction and completion in accordance with the contract if this would involve unreasonable economic waste. It contends that tearing up the floor would be unreasonable economic waste.

*Forsythe* states that in the case of substantial but defective performance the owner is entitled to have the contractor's recovery reduced by the amount that would reasonably be required to remedy the defects, and make the structure conform to the plans and specifications, unless unreasonable economic waste, that is, "destruction of usable property", would occur in bringing the structure into conformity with the contract. If such waste would occur, then the owner's damage must be calculated by the difference between the value of the structure as completed and the value of the structure if it had been constructed according to the contract. For further discussion of these principles, see 5 Corbin, Contracts, § 1089–1091, (1964); Dobbs, Remedies, § 12.21 (1973).

13 Am.Jur.2d, Building and Construction Contracts, § 79, p. 79, states: "The fundamental principle which underlies the decisions regarding the measure of damages for defects or omissions in the performance of a building or construction contract is that a party is entitled to have what he contracts for or its equivalent." It states that as a general rule the measure of damages is the cost of correcting the defects or completing the omissions, rather than the difference in value between what ought to have been done and what was done, where the correction or completion would not involve unreasonable destruction of the work

---

1. The measure of damages instruction was based on MAI 4.01. Plaintiff states it "does not contend and never has contended that 4.02 actually should have been given here. If there had been evidence to support it, 4.01 should have been given."

and the cost of doing so would not be grossly disproportionate to the results to be obtained.

That section, on pages 80 and 81, states that there is authority that the damages for breach of contract in constructing a dwelling, not built in accordance with the plans and specifications, are the costs required to reconstruct it to make it conform to such plans, since, unlike a commercial structure, a dwelling has esthetic value and must be constructed as the owner wants it, even though the finished dwelling may be just as good. As noted in *Forsythe,* the cases referred to do not include any from Missouri. 13 Am.Jur.2d also states at page 82 that "decorating work", to which at least the design of this floor was similar, which is worthless, entitles the owner to the expense of redecorating.[2]

If we follow *Forsythe's* indication that the rule in Missouri is not different as to dwellings, we must determine if tearing out the existing floor and installing a new one would be unreasonable economic waste. Of course, unless hazardous, it is seldom that anything is constructed in such a faulty manner that it could not be used, and we believe the question here must be further narrowed to whether it would be reasonable to use the floor in its condition. What is reasonable to be used in a commercial building may not be reasonable for an owner to tolerate in a residence.

The evidence established that this was an expensive floor that had been rarely installed, if at all, in Southeast Missouri. Plaintiff, whose principal office is in Cape Girardeau, and its installers had not previously installed this type of floor. There is no claim that the breach was wilful. If there were defects in the installation, they appear to have been caused by plaintiff's inexperience with this type of floor.

Defendants presented evidence that there were cracks in the floor wide enough

that a silver dollar could be inserted in them, apparently with the silver dollar on its edge; that there were uneven places and loose boards in three or four locations; and that the floor "squeaks" when walked upon.

There was testimony that the floor is warped, the middle of the boards are sagging, the ends of some boards are curled up, that there are chips in the floor, and "little square holes where you can see subfloor." Defendant Mrs. Ashby said there was a one-sixteenth of an inch difference in the height of some boards and there were gaps between the boards of a sixteenth of an inch "everywhere". Defendant Mr. Ashby said they were going to replace the floor as soon as they could afford to do so.

By stating that the owner can have the contractor's recovery reduced by the amount that it would be required to remedy the defects, *Forsythe* and the other authorities are assuming that other work must have been performed by the contractor that he is entitled to recover for. Here that did not occur, as the contractor's work, if defendants' evidence is to be believed, not only did not accomplish its intended purpose, but actually caused additional damage to the house. Apparently the subflooring had been installed when plaintiff's installer commenced work. Defendants presented evidence that because the boards installed were glued to the subfloor, the subfloor would have to be torn out and replaced in order to properly reinstall the floor defendants requested.

■ As there is no claim of bad faith by plaintiff, we need not consider whether a wilful breach is a proper element to consider in determining the measure of damages. See 5 Corbin, Contracts, § 1089 (1964); Dobbs, Remedies, § 12.21, p. 899 (1978). Nor do we consider that defendants might be unjustly enriched by receiving the replacement costs and then continu-

---

2. For other discussion of the proper measure of damages for defective construction generally outside the contentions raised here, see *Steffens v. Paramount Properties, Inc.,* 667 S.W.2d 725 (Mo.App. Eastern District 1984); *Lawing v. In-* *terstate Budget Motel, Inc.,* 655 S.W.2d 774, 778–779 (Mo.App.1983); *Hensic v. Afshari Enterprises, Inc.,* 599 S.W.2d 522, 524–525 (Mo.App.1980); *Ribando v. Sullivan,* 588 S.W.2d 120, 124 (Mo. App.1979).

ing to use the present floor. They presented evidence that they were embarrassed by the condition of the floor and intended to get it changed. Whether this was true was for the trier of fact. On this aspect of unjust enrichment, see Dobbs, supra, pp. 900–901.

■ If defendants' evidence is believed, they did not get what they contracted for, and the floor was not reasonably suitable for use in the residence. We believe there was evidence from which the trier of fact could determine that unreasonable economic waste would not occur if defendants have a new floor installed. In so determining we have considered that any reasonable doubt whether curing defects would cause economic waste should be resolved against the contractor guilty of the breach and that upon it should be put the burden of proof to show economic waste. 5 Corbin, supra, § 1089, p. 492. It also is compatible with the goal of compensation in a breach of contract action to attempt to place the injured party in the position he would be in if the contract had been properly performed. *Sunny Baer Company, Inc. v. Slaten*, 623 S.W.2d 595, 597 (Mo.App.1981).

The result we reach here is the same as would be reached in the jurisdictions allowing damages for faulty construction of a portion of a dwelling to be the cost to reconstruct it without regard to economic waste. Therefore, it is unnecessary for us to decide if those decisions should be followed in Missouri. The evidence defendants offered on damages was properly admitted and supported submitting their damages to the jury. Points one and two are denied.

■ Plaintiff contends in its third point that the trial court erred in submitting the verdict form for the jury to use on the counterclaim because it stated it was for "the claim of defendants for property damage against plaintiff". Plaintiff contends it was erroneous because defendants' damages, if any, were for breach of contract and not for property damage. If any error was created by this reference, we do not

see how it could have been prejudicial, as the jury heard the evidence and would understand what the claim was about. Why referring to the claim as property damage would confuse the jury or change the result we do not comprehend. Point three is denied.

Plaintiff's remaining point contends that the trial court erred in admitting into evidence five photographs because they were not properly identified as there was no evidence that they were fair and accurate portrayals of the place or subject that they purported to show.

■ A photograph is admissible if a witness familiar with what it shows testifies that it accurately represents the scene it purports to portray; whether a photograph is sufficiently authenticated is a preliminary question for the trial court. *Lustig v. U.M.C. Industries, Inc.*, 637 S.W.2d 55, 62 (Mo.App.1982); *Weber v. Missouri-Kansas-Texas Railroad Company*, 519 S.W.2d 307, 313 (Mo.App.1975). Admission of photographs is within the discretion of the trial court, whose ruling will not be disturbed unless it is shown to be an abuse of discretion. *Beshore v. Gretzinger*, 641 S.W.2d 858, 861 (Mo.App.1982). See also 29 Am.Jur.2d, Evidence, § 788, p. 861; Annot., Authentication or verification of photograph as basis for introduction in evidence, 9 A.L.R.2d 899 (1950).

■ Plaintiff is correct that no witness specifically testified that the photographs accurately represented the floor. Although to do so certainly is the better practice, Missouri apparently follows the rule stated in Scott, Photographic Evidence, § 606, p. 493 (1942), that "photographs are admissible if the reasonable inference from the language employed is that the photographs fairly represent the situation as the witnesses saw it."

In *State ex rel. State Highway Commission v. Cone*, 338 S.W.2d 22, 27 (Mo.1960), a photograph of a building was admitted on the testimony of a witness that "This is the New York Life Building". The court held that this, in effect, said "This photograph

truly represents the portrayed part of the New York Life Building just as I have seen it." It was held that the trial court did not abuse its discretion in treating this as a sufficient authentication. See also *State v. Daugherty*, 631 S.W.2d 637, 641 (Mo.1982); *Hutchison v. Moerschel Products Co.*, 234 Mo.App. 518, 133 S.W.2d 701, 706 (1939).

It is a fair inference from Mrs. Ashby's testimony that these exhibits accurately showed the floor as it was at the time they were taken. She described what they showed with expressions such as "this was the way the floor was left", and "That's what I see." Her testimony was more definite than the witness in *Cone*.

The changes, since the photographs were taken, due to sanding the floor and installing molding, were sufficiently explained so that the jury would not be misled. Changes do not exclude photographs from evidence when the changes are explained, so that the photograph as explained will give an understanding of the conditions that existed at the time in question. *Whitman v. Consolidated Aluminum Corporation*, 637 S.W.2d 405, 408 (Mo.App.1982); *Berry v. Federal Kemper Insurance Company*, 621 S.W.2d 948, 951 (Mo.App.1981).

We believe the questioned exhibits, as well as the other photographs admitted in evidence, would have been of aid to the jury in understanding the type of floor laid, and the condition of it, and would not have been misleading to them. We cannot say that the trial court abused its discretion in admitting the five photographs objected to. This point is denied.

The judgment is affirmed.

GREENE, C.J., CROW, P.J., and HOGAN and MAUS, JJ., concur.